**Eddie Dean FIELDEN, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 881S221.**

Supreme Court of Indiana.

July 29, 1982.

Kenneth J. Allen, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Eddie Dean Fielden, was convicted by a jury of voluntary manslaughter, a class B felony, Ind.Code § 35–42–1–3 (Burns 1979 Repl.) and felony murder, Ind.Code § 35–42–1–1(2) (Burns 1979 Repl.), and was sentenced to a term of imprisonment of fifty years. His direct appeal raises the following six issues.

1. Whether the trial court erred in denying defendant's motion to dismiss the death penalty count;

2. Whether the trial court erred in permitting leading questions to be propounded to defendant's wife on direct examination.

3. Whether the trial court erred in admitting into evidence certain statements given by defendant's wife;

4. Whether there was sufficient evidence to establish a prima facie case and support the verdict of the jury;

5. Whether the trial court erred by permitting a death-qualifying *voir dire* of prospective jurors and by not allowing an individual *voir dire*; and

6. Whether the trial court erred in denying defendant's motion for continuance during the jury selection based on the fact that the Steven Judy execution took place during this time.

A summary of the facts from the record most favorable to the state shows that on the evening of December 25, 1979, the victim, Eli Flesher, and his wife and two children drove up to their home and noticed that lights were on in the house. They immediately became suspicious because they remembered that these lights had not been on when they left home earlier in the day. Mr. Flesher told his wife and children to go to a neighbor's home and call the police. He then went across the street to the home of another neighbor, Mr. Lucas, and asked him to accompany him back across the street. Lucas stayed in front of the house to watch the front door while Flesher went around to the back.

A short time later, Lucas saw a heavy-set man running from behind the house. Then he saw a second man burst through the glass of the storm door in front of the house. This second man fell down the front steps, then stood up and saw Lucas. He told Lucas to "stay away. I've got a gun." The man ran down the street about half a block and drove away in a red Vega automobile. When the police arrived they found Flesher near the front door of his house, shot to death. The house was in complete disarray. Defendant's fingerprints were identified on several items in the house.

Defendant's wife testified at trial that defendant left home on the evening of December 25, 1979 with his cousin in a red Vega automobile. She testified that he had been drinking and using drugs that day. She also testified that on the next day defendant told her to get rid of a gun.

Subsequently, she threw a pistol into a river from the Liverpool Bridge. Police recovered the murder weapon from the water near that bridge. Acquaintances of the defendant testified that he later admitted killing a man during a burglary. One witness testified that when defendant returned home on the evening of the crime he had a gun tucked in his belt.

## I.

■ In his Motion to Correct Errors defendant argued that the trial court erred in denying his motion to dismiss the death penalty count on the basis that the death penalty count was filed nearly ten months after the information on the other counts was filed. However, he has not presented any argument on this issue in his brief and the issue is therefore waived. Ind.R.App.P. 8.3(A)(7); *Guardiola v. State*, (1978) 268 Ind. 404, 375 N.E.2d 1105; *Loza v. State*, (1975) 263 Ind. 124, 325 N.E.2d 173.

## II.

Defendant next contends that the trial court erred by declaring defendant's wife a hostile witness before a sufficient foundation was laid, thereby allowing the state to use leading questions during direct examination. A review of the record discloses that when defendant's wife first took the witness stand she denied substantial portions of statements she had earlier given to the police. A little later, during her direct testimony she stated that she didn't remember the color of the coat her husband was wearing the night of the crime although she had previously given an exact description to the police. At this point, the court declared the witness to be a hostile witness and the state was permitted to ask leading questions.

■ It is clear that leading questions may be put to a hostile witness and the determination of whether a witness is a hostile witness is within the discretion of the trial court. Reversible error will be found only upon a showing of abuse of that discretion. *Bell v. State*, (1977) 267 Ind. 1, 366 N.E.2d 1156; *Rogers v. State*, (1974)

262 Ind. 315, 315 N.E.2d 707; Ind.R.Tr.P. 43(B). Under the circumstances of this case, where the witness was contradicting herself and making conflicting statements, there was no abuse of discretion in the determination that she was a hostile witness.

## III.

Defendant further contends that the trial court erred in admitting into evidence two statements made by his wife over the objection that they were protected as confidential communications between husband and wife. One of the complained of statements was a written statement of defendant's wife in which she said that defendant told her to get rid of the gun the day after the burglary. The other statement was a portion of her testimony in which she said that defendant told a third person to go outside and get a gun that he had hidden the night before but that the third person did not find the gun.

■ It is well settled that communications between husband and wife which are intended to be confidential and gained by reason of the marital relationship are privileged. Ind.Code § 34-1-14-5(6) (Burns 1973); *Williams v. State*, (1982) Ind., 430 N.E.2d 759; *Teague v. State*, (1978) 269 Ind. 103, 379 N.E.2d 418. However, when the communication is intended to be transmitted to a third person or is made in the presence of a third person, there is no privilege because the communication is not confidential. *Resnover v. State*, (1978) 267 Ind. 597, 372 N.E.2d 457.

■ In the instant case, defendant's wife stated that she and defendant had gone to pick up their baby at a third parties' home and that an older woman and several children were present when defendant told her to get rid of the gun. Although she changed this testimony later during cross-examination and said she was the only one present at that time, her original testimony was sufficient evidence to support the trial court's determination that the statement was not within the marital

privilege. The second complained of statement was clearly not within the privilege since it was made to a third person. There was no error in the admission of these statements.

## IV.

Defendant next contends that the trial court erred in failing to grant his motion for judgment on the evidence because the state failed to establish a prima facie case. He first contends that there was no positive identification that he was the person who shot the victim since two men were seen leaving the victim's house after the burglary and shooting. There is no merit to this contention since the law clearly provides that an offense is committed whenever one intentionally or knowingly aids, induces or causes that offense to be committed. Ind. Code § 35–41–2–4 (Burns 1979). We have consistently held that concerted action or participation in a crime is sufficient for this purpose. *Webb v. State*, (1977) 266 Ind. 554, 364 N.E.2d 1016; *Jewell v. State*, (1974) 261 Ind. 665, 309 N.E.2d 441.

■ There was substantial evidence of probative value to support a determination that defendant fully participated in the commission of the instant crimes. Defendant's fingerprints were found on several items within the victim's house. Immediately after the shooting, a man was seen running from the victim's house and driving off in an automobile of the same make and color as the automobile defendant was driving that day. The murder weapon was found in a river at the location where defendant's wife threw a gun into the water on the day after the crime. There was also testimony from witnesses that defendant told them he had shot and killed a man during a burglary.

■ In considering the sufficiency of the evidence, it is well settled that as a court of review, we will neither reweigh the evidence nor judge the credibility of witnesses. Rather, we will look only to that evidence most favorable to the state and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative

value to support the conclusion of the trier of fact, the judgment will not be overturned. *Duffy v. State*, (1981) Ind., 415 N.E.2d 715; *Wofford v. State*, (1979) Ind., 394 N.E.2d 100; *Poindexter v. State*, (1978) 268 Ind. 167, 374 N.E.2d 509. This Court does not have to find that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence but only that an inference may reasonably be drawn therefrom which supports the finding of the jury. *Gilmore v. State*, (1981) Ind., 415 N.E.2d 70; *Hall v. State*, (1980) Ind., 405 N.E.2d 530.

Defendant also contends that he was so intoxicated that he could not have formed the requisite intent to commit the burglary, voluntary manslaughter, or the intentional aiding or inducing of either of these crimes. There was conflicting evidence presented on the issue of intoxication. One of the state's witnesses who resided with defendant and his wife at the time of the crimes testified that defendant had been drinking both beer and whiskey and had smoked a couple of marijuana cigarettes on the night of the crime. He testified that defendant was "very high". Defendant's wife testified that he took PCP on the evening of the crime and was "doped up". However, the court appointed psychiatrist stated that he found no evidence of a mental disease or defect. The record shows that defendant was able to drive his car both to and from the scene of the crime. He spoke clearly to the victim's neighbor when he told him to stay away from the front door. There was testimony that defendant had obtained the murder weapon a few days prior to the crime. He purposely took the gun with him when he left his house early on the evening the crime was committed and had it tucked in his belt when he returned home.

■ Our law is well settled that voluntary intoxication is no defense in criminal proceedings unless it can be shown that the accused was so intoxicated as to be incapable of formulating the requisite intent. *Duffy v. State, supra; Bates v. State*, (1980) Ind., 409 N.E.2d 623; *Larkin v.*

*State*, (1979) Ind., 393 N.E.2d 180. The burden of proving the intoxication defense rests with the defendant. *Dobrzykowski v. State*, (1978) 269 Ind. 604, 382 N.E.2d 170. Whether defendant possessed the requisite intent, despite his claim of intoxication is a question for the trier of fact. *Greider v. State*, (1979) Ind., 385 N.E.2d 424. There was sufficient evidence, as outlined above, to support the jury's determination that defendant was able to form the intent necessary to commit the crimes as charged.

## V.

Defendant further alleges that the trial court erred by permitting a death-qualifying *voir dire* of the jurors. He contends that the exclusion of jurors who would automatically vote against the imposition of the death penalty violated his right under the Sixth and Fourteenth Amendments of the United States Constitution to trial by an impartial jury that was drawn from a representative cross-section of the community. In support of his contention, defendant cites numerous sociological studies which purport to show that a death-qualified jury is more prone to convict than a jury which is not death-qualified.

The United States Supreme Court rejected this constitutional argument in *Witherspoon v. Illinois*, (1968), 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, and set out the standard to be followed on *voir dire* in death penalty cases. The Court held that the jury impartiality to which a criminal defendant is entitled precludes a state from carrying out a sentence of death if the jury that imposed or recommended the death penalty "was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction". 391 U.S. at 522, 88 S.Ct. at 1777, 20 L.Ed. at 785. Only when a venireman is "irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings" can he be struck for cause. 391 U.S. at 522–23 n. 21, 88 S.Ct.

at 177 n. 21, 20 L.Ed. at 785 n. 21. However, the Court made clear in their opinion that any improper exclusion of jurors would affect only the imposition of the death penalty and would *not* affect the defendant's conviction. *Id.* For this reason, the issue of the jury's impartiality here is not before us since defendant did not receive the death penalty. *See also, Norton v. State*, (1980) Ind., 408 N.E.2d 514; *Bond v. State*, (1980) Ind., 403 N.E.2d 812; *Frith v. State*, (1975) 263 Ind. 100, 325 N.E.2d 186.

We further note, however, that defendant's argument that a death-qualified jury is conviction-biased and therefore is less than neutral with respect to guilt has been considered and rejected in other jurisdictions. In *Smith v. Balkcom*, (5th Cir. 1981) 660 F.2d 573, the defendant presented a "plethora of studies" in support of his contention that the exclusion of jurors opposed to capital punishment resulted in a conviction-biased jury. The Court rejected the defendant's argument and reaffirmed their prior holding that regardless of the results of studies concerning death-qualified juries there is no ascertainable standard for determining jury impartiality. Other courts have found that none of the sociological studies presented to them has satisfactorily demonstrated that a death-qualifying *voir dire* has resulted in a jury adjudicating guilt which is unrepresentative of the community or unduly biased in favor of conviction. *Hovey v. Superior Court of Alameda County*, (1980) 28 Cal.2d 1, 168 Cal.Rptr. 128, 616 P.2d 1301, and cases cited.

The federal court explained the rationale for rejecting this type of argument in the following manner:

"In *Spinkellink v. Wainwright*, 578 F.2d 582 (5th Cir. 1978), this court rejected the precise contention now urged by Smith. Today we reaffirm the rationale set forth in *Spinkellink*.

That a death-qualified jury is more likely to convict than a nondeath-qualified jury does not demonstrate which jury is impartial. It indicates only that a death-qualified jury might favor the prosecution and that a nondeath-qualified jury might favor the defendant.

*Id.* at 594.

"All veniremen are potentially biased. The process of voir dire is designed to cull from the venire persons who demonstrate that they cannot be fair to *either* side of the case. Clearly, the extremes must be eliminated—i.e., those who, in spite of the evidence, would automatically vote to convict or impose the death penalty or automatically vote to acquit or impose a life sentence. The guarantee of impartiality cannot mean that the state has a right to present its case to the jury *most* likely to return a verdict of guilt, nor can it mean that the accused has a right to present his case to the jury *most* likely to acquit. But the converse is also true. The guarantee cannot mean that the state must present its case to the jury *least* likely to convict or impose the death penalty, nor that the defense must present its case to the jury *least* likely to find him innocent or vote for life imprisonment.

" * * * The state as well as the accused enjoys a right to an impartial jury." *Smith v. Balkcom, supra,* at 578–79. (footnotes omitted)

Defendant has not shown any constitutional error on this issue.

 Defendant further argues that the trial court erred by holding a group *voir dire* in this case. He argues that in light of the probable prejudicial effects of group *voir dire* in capital cases, that portion of *voir dire* relating to jurors' beliefs about the death penalty must be conducted in sequestration. Defendant bases his argument upon the results reached in a recent California case. *Hovey v. Superior Court of Alameda County, supra.* However, the court in that case was presented with extensive testimony developed at an evidentiary hearing concerning the results of specific sociological studies about the probable prejudicial effects of group *voir dire* in capital cases. In this case, defendant has presented only general conclusions.

Furthermore, it is well settled that the trial judge has broad discretion in controlling the *voir dire* of prospective jurors. His control of the *voir dire* will not be grounds for reversal unless it is shown that there was an abuse of discretion. *Roberts v. State,* (1978) 268 Ind. 127, 373 N.E.2d 1103. Defendant has shown no abuse of discretion here since the jury did not return a recommendation of the death penalty.

### VI.

Defendant finally contends that the trial court erred in denying his motions for a continuance and for an individual *voir dire* during the jury selection on the first day of the trial. He based these motions on the allegedly prejudicial publicity resulting from the fact that Steven Judy was executed on that day.

 It is well settled that a motion for continuance based on a non-statutory ground is addressed to the discretion of the trial court. In order to demonstrate an abuse of this discretion, the record must reveal that the defendant was prejudiced by the failure to grant the continuance. *Downer v. State,* (1982) Ind., 429 N.E.2d 953; *Drollinger v. State,* (1980) Ind., 408 N.E.2d 1228; *Vaughn v. State,* (1978) 269 Ind. 142, 378 N.E.2d 859. In this case, there is no showing of prejudice as the jury returned a verdict of voluntary manslaughter on one count of murder and declined to recommend the death penalty on the other count of murder. Defendant has failed to show that he was prejudiced by the denial of these motions and therefore has presented no reversible error.

For all of the foregoing reasons, there was no reversible error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.