Arthur Paul BAIRD, II, Appellant,

v.

STATE of Indiana, Appellee.

No. 54S00–8804–CR–428.

Supreme Court of Indiana.

Dec. 1, 1992.

**1172**

Susan K. Carpenter, Public Defender, David P. Freund, M.E. Tuke, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Indianapolis, for appellee.

DeBRULER, Justice.

Appellant Arthur Paul Baird, II was charged in Count I with murder pursuant to Ind.Code 35–42–1–1(1) in having knowingly killed Nadine Baird, appellant's wife, by strangulation. In Count II, he was charged pursuant to I.C. 35–42–1–1(1) with having knowingly killed Kathryn Baird, his mother, by stabbing her with a knife. In Count III, appellant was charged pursuant to I.C. 35–42–1–1(1) with having knowingly killed Arthur Paul Baird, I, his father, by stabbing him with a knife.

The information was amended 2 days later and appellant was additionally charged in Count IV with feticide pursuant to I.C. 35–42–1–6 in having knowingly terminated the pregnancy of Nadine Baird with an intention other than to produce a live birth or other than to remove a dead fetus. In a separate Count V, the prosecution sought the death penalty by alleging, pursuant to I.C. 35–50–2–9(b)(8), the aggravating circumstance that appellant murdered Arthur Paul Baird, I, also having knowingly killed Kathryn and Nadine Baird. In Count VI, the prosecution alleged, pursuant to I.C. 35–50–2–9(b)(8), the aggravating circumstance that appellant murdered Nadine Baird, also having knowingly killed Arthur Paul Baird, I and Kathryn Baird. Finally, the prosecution alleged in Count VII, pursuant to I.C. 35–50–2–9(b)(8), the aggravating circumstance that appellant murdered Kathryn Baird, also having knowingly killed Arthur Paul Baird, I and Nadine Baird.

On February 17, 1987, a jury returned verdicts of guilty as charged in Counts I through IV. A judgment of conviction was then entered. The jury reconvened the next day for the hearing regarding the sentencing recommendation. Following the presentation of evidence, the jury retired and then returned a verdict recommending that the death sentence be imposed for the murders of Arthur Paul Baird, I and Kathryn Baird, but recommending that the death sentence not be imposed for the murder of Nadine Baird.

Three weeks later the court held the sentencing hearing, during which the evidence and arguments were heard and concluded. The trial court then made an express and written finding that the State proved the aggravating circumstances to the court beyond a reasonable doubt. The court further concluded that the mitigating circumstances were outweighed by the single aggravating circumstance and ordered death on Counts II and III. The court also imposed a sixty-year sentence on Count I and an eight-year sentence on Count IV, to be served concurrently.

The evidence adduced at trial viewed most favorably to the verdict shows that the following events transpired. Appellant and his wife, Nadine, lived in a house trailer located on the forty-acre farm near Darlington, Indiana, that he jointly owned with his parents, Kathryn and Arthur Paul Baird, I. His parents lived in the farmhouse and appellant's maternal grandmother, Noradean Fleming, lived in another trailer on the property. At approximately 4:00 or 5:00 p.m. on September 6, 1985, appellant and Nadine were getting ready to drive to Crawfordsville to go shopping. They planned to visit with Nadine's parents, Lemoyne and Margaret Altic, after they finished, as was their habit on Friday evenings. Nadine was ready to leave before appellant and due to the heat she lay down on the bed and turned a portable fan on herself while she waited for him. After appellant finished getting ready, he walked back to the bedroom and strangled his wife with his hands, then tied a plaid shirt around her neck.

Nadine's parents called the trailer twice that evening. Around 6:00 p.m., appellant told her parents that they would not be visiting because Nadine was sick. The Altics were worried because Nadine was about six months pregnant and they wanted to check on her, but appellant told them

not to come over because she had gone to bed. The Altics called back at 10:00 p.m., after also having called appellant's parents to inquire as to Nadine's health, at which time appellant told them that Nadine was still asleep.

Appellant spent the rest of the night in the trailer watching television, writing notes, and periodically lying down next to his wife's body to hold her. He went to his parent's house at about 7:00 a.m., finding them already awake. He fed the chickens and brought the newspaper to his father, and his mother gave him a hair cut. His father then went outside to the washhouse and his mother returned to the sink to finish making some pickles she had started. Appellant then grabbed her from behind, covered her mouth with one hand, reached for a butcher knife, and stabbed her several times in the abdomen and throat as she struggled and screamed for help. As soon as she fell to the floor he headed for the back door and met his father who was entering the house. Appellant mentioned something about a disturbance, and before his father could react appellant stabbed him in the abdomen and throat as the victim attempted to fight him off.

Appellant went back to the trailer and gathered items which he then loaded in his parent's car until the rear end nearly touched the ground. Margaret Altic called between 8:00 and 9:00 a.m., and appellant told her that Nadine was alright but still in bed. He stated that they were going to leave soon for their realtor's office to close the deal on a 253 acre farm that they had been attempting to purchase for approximately a year and that they would stop over afterwards. Mrs. Altic called again at 9:45 a.m. and appellant again told her that he was about to awaken Nadine and that they would come over after the closing.

Appellant left in his mother's loaded down car but turned around in a neighbor's driveway to come back for a pair of pliers that he thought he might need to open some canned food jars. He left again around 11:00 a.m., driving south toward Lagoda through Darlington and Crawfordsville and then on back roads to Huntingburg, where he was apprehended, two and one half hours from his home, at 4:00 p.m. on Sunday, September 8th, while watching a softball game.

Appellant presents nineteen issues in this appeal.

## I.

Appellant first contends that the state failed to prove he acted voluntarily, citing I.C. 35–41–2–1(a), which provides in pertinent part, "A person commits an offense only if he voluntarily engages in conduct in violation of the statute defining the offense." I.C. 35–41–2–1(a) appears to be the codification of the actus reus requirement, the absence of a voluntary act negating the act element of the offense definition.

Appellant is correct in stating that the State must prove beyond a reasonable doubt that the accused voluntarily engaged in conduct as an element of an offense. Appellant's analogy to the burden of proof with respect to "sudden heat" is useful. In that context, once there is evidence presented which raises the existence of sudden heat, the State has the burden of establishing the lack of sudden heat beyond a reasonable doubt. If the state fails to meet its burden, sudden heat mitigates what would otherwise be murder to voluntary manslaughter.

The State's burden with respect to voluntariness is similar. In most cases there is no issue of voluntariness and the State's burden is carried by proof of commission of the act itself. However, once evidence in the record raises the issue of voluntariness, the state must prove the defendant acted voluntarily beyond a reasonable doubt. Appellant contends that the evidence presented in his case provides a factual basis sufficient to raise the issue of voluntariness so as to require the State to prove beyond a reasonable doubt that he acted voluntarily. We disagree.

Appellant has conflated the meaning of "voluntary act" with the concept of

"irresistible impulse," which was formerly part of Indiana's insanity statute. I.C. 35–41–3–6. I.C. 35–41–3–6 was amended by P.L. 184–1984, Sec. 1, to eliminate the test of irresistible impulse: lacking substantial capacity to conform conduct to the requirements of law. The requirement of a voluntary act was meant to exclude from the kind of conduct which may be considered criminal that which, in the ordinary sense, occurs beyond the control of the actor such as convulsions and reflexes. Ind. Crim. Law Study Comm'n, *Indiana Penal Code Proposed Final Draft*, October 1974, at 12. *See* LaFave & Scott, Criminal Law 3.2; Model Penal Code 2.01(1). The evidence appellant points to as raising the issue of voluntariness thus actually would bear on the issue of "irresistible impulse," were that test still recognized as part of the insanity defense, but fails to provide a factual basis which would require the prosecution to prove beyond a reasonable doubt that appellant acted voluntarily.

## II.

Appellant next contends that the jury's finding concerning appellant's insanity defense was contrary to law because appellant proved by a preponderance of the evidence that he was insane at the time of the crime, and because the jury was not properly instructed concerning "irresistible impulse." The jury was not properly instructed, appellant argues, because, despite the elimination of the irresistible impulse defense from our insanity statute, it would be unconstitutional not to recognize the defense, as its disallowance would unconstitutionally shift the burden of proof on mens rea to the defendant, in violation of *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (holding that a state may not require a defendant to prove an affirmative defense that negates an element of the crime).

■ When reviewing the claim on appeal that the verdict and finding of guilty are contrary to law because the defense sustained its burden to prove insanity by a preponderance of the evidence, this Court will not weigh the evidence or resolve questions of credibility of witnesses, and from this viewpoint will not reverse unless the evidence is without conflict and leads to but one conclusion, namely one not reached by the trier of fact. *Christopher v. State* (1987), Ind., 511 N.E.2d 1019; *Smith v. State* (1987), Ind., 502 N.E.2d 485.

■ In this case, two court appointed psychiatrists testified that appellant was able to appreciate the wrongfulness of his conduct at the time of the commission of the crime. One other psychiatrist testified that he could not. The prosecution introduced evidence to show that appellant deceived his parents and his wife's parents after killing his wife in order to evade detection by telling them she was ill and in bed. He killed his parents approximately twelve to fourteen hours after his wife, having waited until his father left the house and his mother had turned her back to him. He covered his mother's mouth with his hand when he attacked her so as not to raise his father's attention, and then told his father there had been a disturbance so as to distract him before he attacked. He again deceived his wife's parents after he had killed his own, telling them he and his wife would stop in to visit after they closed on the farm when he was in reality packing his mother's car to flee the scene of his crimes. He deceived a Jasper police officer who had been called to check on him while he was sitting in his car outside a bar at closing time, telling him that he had been travelling and just needed a place to rest. Clearly, the evidence on this point was in conflict and did not lead unerringly to the conclusion that appellant lacked the requisite capacity to appreciate the wrongful nature of his conduct when he killed.

Appellant's argument that requiring a defendant to prove that he was unable to appreciate the wrongfulness of his conduct unconstitutionally shifts the burden of proof on the *mens rea* element was previously rejected by this Court in *Ward v.*

*State* (1982), Ind., 438 N.E.2d 750. Appellant contends, however, that this Court's analysis in Ward fails with the removal of the irresistible impulse defense from the insanity statute, because this Court cited the irresistible impulse defense in support of the idea that the presence of "knowingly" as an element of the offense does not negate the defense of insanity. Appellant is incorrect in asserting that irresistible impulse was the sole decisional support in *Ward*. Irresistible impulse was merely a convenient example of how one could be "aware of a high probability" that he is killing another and yet be insane if one were unable to appreciate the wrongfulness of the killing. The jury was properly instructed as to the defense of insanity.

### III.

█ Appellant next contends that the trial court erred in refusing several of his tendered jury instructions at the guilt and penalty phases of the trial. In considering whether any error results from the refusal of a tendered instruction, we must determine whether the instruction correctly states the law, whether there is evidence in the record to support the giving of the instruction, and whether the substance of the instruction is covered by other instructions which are given. *Williams v. State* (1985), Ind., 481 N.E.2d 1319.

█ Appellant first claims that the trial court committed error in refusing his Tendered Final Instruction No. 10, an instruction on the lesser included offense of voluntary manslaughter, with respect to the murder of his wife. An instruction on voluntary manslaughter is not required absent evidence of "sudden heat," which is defined as anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary man, which prevents deliberation and premeditation, excludes malice, and renders a person incapable of cool reflection. *McBroom v. State* (1988), Ind., 530 N.E.2d 725. Also, mere words are not sufficient provocation to precipitate sudden heat. *Gregory v. State* (1989), Ind., 540

N.E.2d 585, 593. Appellant argues that evidence in the record raised the issue of sudden heat and entitled him to an instruction on voluntary manslaughter. He points to the prosecutor's final argument which posits that appellant did not want to appear a failure in the eyes of his family and that this sentiment brought him to a crisis as the closing date on the farm approached, and that perhaps Nadine had finally "confronted" appellant about the farm. This statement does not, without more, raise the issue of sudden heat; and in light of appellant's own admission that he had killed his wife while she was lying peacefully on their bed and that they had not argued and were not angry with each other, leads us to find that the trial court did not err in refusing appellant's Tendered Instruction No. 10.

█ Appellant asserts that the trial court erred in refusing his tendered Penalty Phase Instruction No. 10, which listed eleven alleged mitigating circumstances that the jury was to be instructed it must consider if it found them to exist. Appellant claims that the instructions given by the court, as well as the death penalty statute itself, contravene the holdings of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), by not requiring, via the mandatory language of the refused instruction, the sentencer to consider any aspect of a defendant's life, character and record as mitigating evidence. The trial court gave Defendant's Preliminary Instruction No. 3 (Penalty Phase) (given as modified), which set out the mitigating circumstances listed in I.C. 35–50–2–9(c), and Defendant's Instruction No. 4 (Penalty Phase), which reads as follows:

> [T]he mitigating circumstances which I have read for your consideration are given you as examples of some of the factors that you may take into account as reasons for deciding not to impose the death penalty on the Defendant, Arthur Paul Baird, II. You should pay careful

attention to each of those factors. Any one of them may be sufficient standing alone to support a decision that death is not the appropriate punishment in this case, but you should not limit your consideration of the mitigating circumstances to those specific factors. You must also consider the character and history of Arthur Paul Baird, II as well as any other mitigating circumstances as reasons for not imposing the death penalty.

Record at 4059. These instructions adequately convey not only examples of specific types of evidence that the jury may consider as mitigating but mandate that the jury consider any reason not to impose the death penalty, especially the character and history of the accused. The trial court did not commit error in refusing the tendered instruction.

■ Appellant also contends that the trial court erred in refusing Defendant's Instruction No. 2 (Penalty Phase), which would have informed the jury that it may not recommend the death penalty if the State failed to prove beyond a reasonable doubt the existence of the aggravating circumstance alleged or if it found that the mitigating circumstances outweigh the aggravating circumstance. Appellant claims that the instruction given by the trial court on this issue, Defendant's Preliminary Instruction No. 1 (Penalty Phase) (given as modified), was inadequate because it merely stated that the jury may recommend the death penalty only if it finds that the State has proved beyond a reasonable doubt that the aggravating circumstance exists and that any mitigating circumstances that exist are outweighed by the aggravating circumstance. Appellant also claims that this instruction is misleading in that it does not inform the jury that the mitigating factors may be added together to outweigh the aggravator, whereas the tendered and refused instruction specifically advised the jury of this possibility. We fail to see any substantive difference in the language of the two instructions. The instruction given

is adequate and not misleading, and the addition of appellant's tendered instruction would have been mere surplusage.

■ Appellant argues that the trial court erred in refusing his tendered Instruction No. 9 (Penalty Phase) on Article I, section 18 of the Indiana Constitution. This instruction would have informed the jury that the Indiana Constitution provides that the penal code shall be founded on the principles of reformation, and not of vindictive justice. Appellant claims that because his argument at the penalty phase was directed at his character as a sincere, religious person who is likely to be successfully rehabilitated and no threat to society, the refusal of this instruction denied him a full and complete defense. This Court has repeatedly rejected the use of an instruction on Art. I, sec. 18. Although the instruction is a correct statement of the law, the provision seems to be addressed to lawmaking bodies and would likely mislead or confuse a jury. *Woods v. State* (1989), Ind., 547 N.E.2d 772, *cert. denied,* —— U.S. ——, 111 S.Ct. 2911, 115 L.Ed.2d 1074 (1991); *Denson v. State* (1975), 263 Ind. 315, 330 N.E.2d 734. The trial court properly refused this instruction.

■ Appellant asserts that the trial court erred in refusing his tendered Instruction No. 7 (Penalty Phase), which would have informed the jury that in order to impose the death penalty it must find that the aggravating circumstance outweighed the mitigating circumstances beyond a reasonable doubt. Appellant argues that he was arbitrarily and capriciously sentenced to death because the death penalty was imposed without the use of the reasonable doubt standard in weighing the aggravating and mitigating circumstances. As appellant concedes, this Court has consistently rejected the use of the reasonable doubt standard in this context. The jury was instructed as to the statutory requirements for weighing the aggravators and mitigators. The tendered instruction was not a correct statement of the law and was

properly refused. *Fleenor v. State* (1987), Ind., 514 N.E.2d 80, *cert. denied*, 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158 (1988); *Spranger v. State* (1986), Ind., 498 N.E.2d 931, *cert. denied*, 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 536 (1987); *Moore v. State*, Ind., 479 N.E.2d 1264 (DeBruler, J., dissenting on other grounds), *cert. denied*, 474 U.S. 1026, 106 S.Ct. 583, 88 L.Ed.2d 565 (1985).

### IV.

■ Appellant argues that the trial court erred in giving State's Instruction No. 2, which instructed the jury that the state was not required to prove its case with direct evidence, but with such evidence as will satisfy a jury beyond a reasonable doubt that the crime charged was committed by the defendant with the felonious intent charged in the affidavit. Appellant argues that this instruction is an incorrect statement of the law because it implies that the burden of proof on the element of intent shifted to the defendant. This instruction is simply a statement of the law regarding circumstantial evidence, is not misleading, and was properly given, especially where the jury was properly instructed as to the burden of proof. *Miller v. State* (1989), Ind., 541 N.E.2d 260.

■ Appellant claims that the trial court erred in giving State's Instruction No. 5, which stated that premeditation is not an element of the crime of murder. The prosecutor requested this instruction because defense counsel characterized the state's view of events as an elaborate plan on the part of appellant to murder his family and then ridiculed such a view. While negative instructions concerning the elements of a crime are generally disfavored, this instruction is a correct statement of the law and is not confusing. Under the circumstances the trial court did not err in giving State's Instruction No. 5.

### V.

■ Appellant claims that the trial court erred in giving State's Instruction

No. 4 during the penalty phase. Instruction No. 4 was the separate page of the information filed against appellant which sets out in Counts V, VI, and VII the circumstance aggravating each murder alleged by the State in its requests for the death penalty. Appellant claims that by reading the entire separate page and by referring to the multiple murder aggravator on some occasions as "aggravating circumstances" the trial court misled the jury into believing that there was more than one aggravating circumstance that the jury could weigh against the mitigating circumstances. He also argues that use of the plural "aggravating circumstances" served to artificially inflate the weight of the single aggravator and dilute the weight of the mitigators by giving weight to his mental illness only with respect to Nadine's murder. Appellant's argument is without merit. The State requested that a sentence of death be imposed for each of the three murders committed and was required to prove beyond a reasonable doubt that an aggravating circumstance existed for each murder in order to subject appellant to the death penalty. Although the trial judge did refer to the multiple murder aggravator as "aggravating circumstances" when he was discussing in the abstract the standards to be applied in the weighing process, the judge did clearly and properly instruct the jury as follows:

> The aggravating circumstance alleged by the State is that the Defendant has committed another murder at any time regardless of whether he was [sic] been convicted of that muder [sic]. This is the only aggravating circumstance that you may consider. You are not allowed to take account of any other facts or circumstances as the basis for deciding that the death penalty would be an appropriate punishment in this case.

Record at 4058–59. In addition, immediately prior to reading the separate page of the information, the trial court instructed the jury that the alleged circumstance aggravating each murder must be proven beyond

a reasonable doubt before the jury may consider recommending the death penalty for each murder. Any potential confusion that could have arisen in the mind of a reasonable juror as to how many aggravating circumstances existed and how to apply the evidence of each to the separate murders would certainly have been dispelled by the instructions cited above. We fail to see any prejudice to appellant and find no error.

## VI.

Appellant argues that the trial court's written Findings of Fact show that he was arbitrarily and capriciously sentenced to die. He alleges in support of this contention that the trial court failed to consider and give weight to all relevant mitigating evidence in violation of the holding in *Eddings*. He asserts that the trial court refused, as a matter of law, to consider circumstances mitigating against death for the murder of his parents, circumstances it had already found to exist with respect to the murder of his wife, namely that appellant was under the influence of extreme mental or emotional disturbance when he committed the murder, and that that mental condition substantially impaired his capacity to conform his conduct to the requirements of law.

In paragraphs 7(b) and (c) of its written findings of fact, the trial court found that there was evidence, although conflicting, which would support a jury finding that appellant was under the influence of an extreme mental or emotional disturbance at the time he committed the murder of his wife, which mental condition may also have been considered by the jury to have substantially impaired his capacity to conform his conduct to the requirements of law. The trial court also specifically found that there were no mitigating circumstances springing from appellant's mental condition at the time of the murder of his parents, and set out the facts indicating such a finding in paragraphs 21(a)–(g). The trial judge did not exclude mitigating circum-

stances from his consideration as a matter of law but carefully considered the facts surrounding the murders of appellant's parents and found that appellant's mental condition was of no mitigating weight, and that the lapse of time contraindicated the carry over of any mitigating mental condition that the jury might have found to exist at the time of Nadine's murder.

Appellant next claims that the trial court used a constitutionally impermissible standard to weigh the aggravating and mitigating circumstances. In paragraph 22 of the written Findings of Fact the trial court found that the "mitigating circumstances do not offset or outweigh the aggravating circumstances of the murder of Kathryn Baird and Arthur Paul Baird I." Record at 346. Appellant argues that this language indicates that the trial judge presumed that death was the appropriate penalty unless appellant established sufficient mitigating evidence to offset or outweigh that presumption. The statutory language requires that "any mitigating circumstances that exist are outweighed by the aggravating circumstance. . . ." I.C. 35–50–2–9(e). While it would have been better had the trial court employed the precise formulation of the statute, the language used reveals no unlawful presumption. The trial court seems to have used the term "offset" to mean "equivalent," indicating that the trial court would not have imposed the death sentence if the weight of the mitigating circumstances was equivalent to or greater than the weight of the aggravating circumstance, a presumption that death is not the appropriate penalty. We find no error.

Finally, appellant asserts that the death penalty is not appropriately applied in this instance. He argues that the aggravator alleged and found by the jury and court does not outweigh the overriding mitigating circumstances of his life history and mental illness. Review by this Court of every death sentence is automatic, mandatory, and cannot be waived. *Cooper v. State* (1989), Ind., 540 N.E.2d 1216. This

review includes consideration of whether the procedure before the jury and court by which the penalty has been imposed accords with the dictates of the sentencing statute, and whether the evidence renders the sentence appropriate. *Vandiver v. State* (1985), Ind., 480 N.E.2d 910.

██ The trial court gave due consideration to the recommendation of the jury, including the fact that it recommended death for the murders of Kathryn Baird and Arthur Paul Baird, I, but not for the murder of Nadine Baird. The judge declared in his findings at sentencing that the State proved beyond a reasonable doubt that at the time of the murders of Kathryn and Arthur Paul Baird, I, appellant had committed another murder, that of Nadine Baird. The evidence manifestly proves this aggravating circumstance beyond a reasonable doubt.

██ The judge also declared in his findings that the several mitigating circumstances he found to exist were outweighed by the single aggravating circumstance. The court considered all categories of mitigating factors, finding that appellant had no history of prior criminal conduct, was of a law abiding nature, was an active participant in his church, held employment and provided for his family as best he could, served his country in military service and was honorably discharged, and was generally held to be a person of good character in his community. With respect to the murder of Nadine Baird, the court also found that appellant may have been under the influence of extreme mental or emotional disturbance at the time of the murder, and that this same mental condition may have substantially impaired appellant's capacity to conform his conduct to the requirements of the law.

The court specifically found that there were no mitigating circumstances springing from appellant's mental condition at the time of the murder of his parents. After review of the record including the psychiatric testimony, however, we are inclined to find that appellant's mental condition at the time of the murders of his parents is entitled to some mitigating value. The psychiatric evidence supports a determination that appellant has an obsessive-compulsive disorder. The testimony was uncontradicted that appellant sincerely believed that the federal government was going to give him one million dollars for his ideas on how to solve the country's economic problems, and that he and Nadine would use the money to purchase and equip a 253 acre farm. There was no basis in experience for this belief. At this time appellant had no income, was in debt, and Nadine was pregnant. Appellant was so obsessed with the idea of buying this farm that he set a closing date at which time he was to tender a $50,000 certified check, and as he finally realized that his grandiose plans would be exposed as a mere fantasy to the persons whose derision would be most destructive to him he was compelled to protect himself from them. We find that appellant was under the influence of extreme mental or emotional disturbance when the murders were committed, but find this mitigating factor to be in the low range. We also find that the mitigating circumstances of appellant's regular employment, church participation, military service, law abiding nature, and good character in the community each to be in the low range. Appellant's lack of prior criminal history is a mitigating factor in the medium range. Upon review, we find that these mitigating circumstances as we have determined and evaluated them are outweighed by the sole aggravating circumstance, namely, the murders of Kathryn and Arthur Paul Baird, I, having already committed the murder of Nadine Baird, an aggravating circumstance in the highest range. Appellant's sentence is not arbitrary or capricious and is not manifestly unreasonable.

## VII.

Appellant asserts that the trial court committed fundamental error by sentencing him to death, arguing that his death

sentence is disproportionate, fails to narrow the class of death eligible persons, violates the Eighth Amendment prohibition against using factors that are mitigating as aggravating, and violates the individualized sentencing requirement.

▮▮▮ Appellant first claims that his death sentence is disproportionate under the two-part test set out in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976): punishment is excessive if it involves an unnecessary and wanton infliction of pain or is grossly out of proportion to the severity of the crime. Appellant argues that his death sentence involves the unnecessary and wanton infliction of pain because it makes no measurable contribution to acceptable goals of punishment, due to the fact that appellant suffers from some sort of mental illness and was therefore unable to be deterred from committing a multiple murder. This argument rests on a questionable premise concerning appellant's mental condition. Although appellant seems to have some sort of mental disorder, there is no evidence to suggest that appellant was undeterrable because of this mental condition. Appellant also contends that his death sentence is grossly out of proportion to the severity of the crime because it rests on "knowing" murders. We disagree. Appellant's death sentence rests on his multiple formations of a highly culpable state of mind resulting in multiple murders and is not disproportionate on that basis. Additionally, appellant claims that Article I, sec. 16 of the Indiana Constitution mandates comparative proportionality review because it requires that "cruel and unusual punishments shall not be inflicted" and "[a]ll penalties shall be proportioned to the nature of the offense." This section does not mandate comparative proportionality review, but review based on the nature of the instant offense and offender. Neither is comparative proportionality review constitutionally required. *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). We reject appellant's argument.

▮▮▮ Appellant next contends that a multiple murder aggravator based on "knowing" murders fails to narrow the class of death eligible murderers because it ignores "moral guilt," rests on the same facts as the convictions, and is overbroad and vague. As stated above, appellant's death sentence rests on the multiple formations of a highly culpable "knowing" state of mind resulting in multiple murders, a meaningful basis upon which to distinguish between those murder cases in which the death penalty may be imposed and those in which it may not and which does not ignore consideration of moral guilt. Appellant then claims that the overlap between the aggravating circumstance found at the sentencing phase and the convictions at the guilt phase violates constitutional principles by eliminating the critical narrowing function of the sentencing process, allowing the State to enter the penalty phase with the aggravating circumstance already proven beyond a reasonable doubt. Our death penalty statute requires the sentencer to find at least one aggravating circumstance beyond a reasonable doubt, to consider and evaluate any mitigating factor it may find to exist, and to weigh the aggravators and mitigators, finding that the mitigating circumstances are outweighed by the aggravating circumstances, before it may impose death. This scheme adequately structures and channels the discretion of the jury and the court and satisfies the ruling in *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (holding that the fact that the aggravating circumstance duplicated one of the elements of the crime does not make the death sentence constitutionally infirm where the narrowing function was performed by the jury at the guilt phase). Finally, appellant contends that the multiple murder aggravator is overbroad and vague because it illogically distinguishes between those who kill knowingly and those who kill recklessly. The legislative decision that those who commit more than one murder while being aware of a high probability that they are doing so are ap-

preciably more culpable than those who do so "in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct" is not arbitrary or illogical. I.C. 35–41–2–2(c). Appellant's argument is unpersuasive.

 Appellant asserts that the fact that he committed "knowing" murders is evidence of a lesser mental state, a mitigating circumstance, and that his death sentence based on the multiple murder aggravator violates the Eighth Amendment prohibition against using mitigating factors as aggravating factors as set out in *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). Once again, appellant's death sentence rests upon the multiple formation of a highly culpable mental state resulting in multiple murders. It is the multiple formations that aggravate appellant's crime. His mental condition was properly considered in evaluating the mitigating circumstances and his sentence based on the multiple murder aggravator does not improperly treat mitigating circumstances as aggravating circumstances.

Appellant maintains that limiting the jury's consideration of the aggravating circumstance to "knowingly," as opposed to "intentionally," usurps the jury's duty to make an individualized determination of appellant's sentence. We fail to comprehend how the jury's consideration of the nature of the offense and the character of the offender is restrained by this limitation and reject appellant's contention.

### VIII.

 Appellant contends that the trial court erred in denying his motion to sever Counts I and IV from Counts II and III, to which he claims he was absolutely entitled because the counts were joined because they were of the same or similar character, pursuant to I.C. 35–34–1–9(a)(1). The offenses are not of the same or similar character, however, but are based on a series of acts connected together or constituting parts of a single scheme or plan, pursuant to I.C. 35–34–1–9(a)(2). Thus their severance is a matter left to the discretion of the trial court guided by the considerations set out in I.C. 35–34–1–11(a): the number of offenses charged, the complexity of the evidence, and whether the jury will be able to distinguish the evidence and apply the law intelligently as to each offense. There were four offenses charged, and the only complex evidence was the psychiatric testimony relating to appellant's insanity defense, which would have been as complex whether the counts charged were tried together or separately. Appellant has failed to demonstrate clear error. *Davidson v. State* (1990), Ind., 558 N.E.2d 1077.

### IX.

 Appellant asserts that the trial court erred in admitting into evidence the videotaped depositions of Jane Eubank and Noradean Fleming, taken for the purpose of preserving testimony for trial, because appellant was not present at the taking of those depositions and his right of confrontation was violated by their admission into evidence. Because appellant did not object to the admission of these depositions at trial this issue is presented as fundamental error.

When raising an issue as fundamental error, defendant bears the burden of proving that a blatant violation of basic and elementary principles had occurred which rendered the trial unfair to the defendant. *Shoulders v. State* (1985), Ind., 480 N.E.2d 211. Appellant has failed to meet that burden. The deposition of Jane Eubank was taken four days prior to trial to preserve her testimony because she planned to be out of the state during trial. Noradean Fleming's deposition was taken sixteen days before trial (at the Montgomery County Jail) due to her age. Both parties stipulated that the depositions would be admissible as trial testimony. Defense counsel moved that the depositions be filed in the trial court, although they were both admit-

ted into evidence during the state's case in chief. Defense counsel was present and conducted cross examination during Eubank's deposition, and defense counsel was present and conducted the direct examination of Fleming. Fleming's deposition was introduced as evidence by defense counsel on behalf of appellant during the death penalty phase of the trial. The testimony of both witnesses was not only beneficial but important to appellant's insanity defense: Eubank provided the details of appellant's attempts to purchase the Paddock farm and her belief in his sincerity, and Fleming gave her opinion that appellant must have been insane when he killed his wife and parents. Appellant cannot now be heard to argue that defense counsel should have objected to the introduction of this evidence on confrontation clause grounds and that the failure to do so was so prejudicial that he was denied his right to a fair trial and that justice cannot permit the verdicts resulting from that trial to stand.

### X.

Appellant contends that the jury was unfairly composed due to the trial court's denial of several defense motions pertaining to the jury selection process.

 The trial court denied appellant's motion to prohibit (or, in the alternative, limit) death qualification of prospective jurors. Appellant claims he was harmed by the trial court's failure to regulate the type of questions that could be asked of prospective jurors; in particular he complains of the prosecutor asking potential jurors whether they had any "religious, moral or conscientious objections" to the death penalty. It is clear from the record that this question was simply a means of introduction to the subject, designed to focus the individual's attention on his thoughts and opinions regarding capital punishment and to facilitate open and honest discussion of a difficult subject. Only jurors who state, without equivocation or self-contradiction, that they would not vote for death in any case can be excluded, and appellant is unable to point to any instance in which a prospective juror was erroneously dismissed due to improper questioning, and has not otherwise demonstrated prejudice. *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); *Lamar v. State* (1977), 266 Ind. 689, 366 N.E.2d 652.

 Appellant claims the trial court erred in denying his petition for public funds to hire an expert to assist him in the death qualification of jurors and segregated *voir dire*. To support his position appellant cites to *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), which held that an indigent defendant was entitled to funds to hire a psychiatrist to assist him in presenting his insanity defense. This Court has previously held that the appointment of experts to assist the defense in the *voir dire* portion of the trial is a matter left to the discretion of the trial court. *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900 (1986); *Thomas v. State* (1984), Ind., 459 N.E.2d 373. The reasons pointed to by appellant as necessitating his hiring of a juristic psychologist are not specific to his request, but general claims of disadvantage in trying to select an impartial jury which he argues would have been abated by hiring an expert: he was represented by only one attorney, death qualification of potential jurors was allowed by the trial court, lack of segregated *voir dire*, juror knowledge of media accounts, and juror rejection of insanity as a defense. Under these circumstances we cannot state that the trial court abused its discretion in denying appellant's petition.

 Appellant further contends that the trial court erred in denying his Motion for Segregated *Voir Dire*. He asserts that the prospective jurors were "tainted" by being exposed to each other's recollections of media accounts and opinions on the insanity defense, capital punishment, and ap-

pellant's guilt. This issue has previously been before this Court and rejected. *Wisehart v. State* (1985), Ind., 484 N.E.2d 949, *cert. denied*, 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556 (1986). It is well settled, however, that the trial judge has discretion to require such a procedure under special circumstances. *Lowery*, 478 N.E.2d at 1221. In this case the panel was questioned as a group initially and then separated into groups of three to discuss knowledge of media accounts, the insanity defense, and the death penalty. The trial court thoroughly questioned each prospective juror as to the details of news reports that they may have recalled and admonished them that their verdicts must be based on the evidence produced at trial. Each juror impaneled expressed that they could try this case on the evidence, put aside any prior opinions they might have formed, and give the defendant the presumption of innocence. The trial court did not err in denying appellant's motion.

Appellant cites as error the trial court denial of his motion for additional peremptory challenges, which motion was made after the trial judge excused a juror who had previously been impaneled. As stated above, the control of *voir dire* by the trial court is a discretionary matter. *Fielden v. State* (1982), Ind., 437 N.E.2d 986; *Lowery*, 478 N.E.2d 1214. Both parties had additional peremptory challenges remaining when juror MeHarry was excused, and there was only one juror left to impanel. The trial court's refusal to grant additional peremptories did not significantly impact appellant's jury selection strategy. We find no error.

Finally, appellant argues that the denial of each of the motions discussed impacted the situations addressed by the other motions and that the cumulative effect of the denials deprived appellant of a trial before a fair and impartial jury. Where there is no error detected as to each particular issue, however, there can be no cumulative error, and, accordingly, we reject appellant's claim.

### XI.

Appellant contends that the trial court erred in not sequestering the jury from the time each juror was accepted by the parties, rather than from the time they were sworn. He claims that appellant was also prejudiced because jurors were not admonished to avoid media accounts of the trial. In a capital case the trial court is required to sequester the jury when requested. *Smith v. State* (1985), Ind., 475 N.E.2d 1139. A defendant is not entitled to have jurors sequestered as they are accepted and the trial court did not commit error in denying appellant's motion. Appellant does not point to any case where a juror was chosen and then exposed to prejudicial material prior to being sequestered. He also did not request the trial court admonish jurors or prospective jurors in any way, and the jury panel was properly admonished at the time they were sequestered. The trial court did not commit error in denying appellant's motion.

### XII.

Appellant next claims that the trial court committed error by *sua sponte* excusing prospective juror Fisher for cause. Appellant states that Mrs. Fisher told the trial court that she could keep an open mind and follow the court's instructions, and that her main concern about serving as a juror was being absent from her teaching position, not her ability to be fair. The grant or denial of a challenge to a juror is within the trial court's discretion and will be reversed on appeal only if the decision is illogical or arbitrary. *Woolston v. State* (1983), Ind., 453 N.E.2d 965. The record shows that the trial court explained to Mrs. Fisher that the goal of *voir dire* was to select jurors who "from a standpoint of previous knowledge, from a standpoint of conscience, from a standpoint of ability, are free ... to listen to the evidence, free to make a decision based on that evidence alone...." Record at 1418. Mrs. Fisher answered by stating that she would still feel some slight bias. The trial

court's decision to excuse Mrs. Fisher was neither illogical nor arbitrary. We find no error.

## XIII.

■ Appellant claims that the trial court erred in denying his motion for court instruction prior to *voir dire*. The instruction appellant requested was intended to inform the prospective jurors that questions during *voir dire* concerning the death penalty were required by law and did not indicate a belief in appellant's guilt. As previously stated, in evaluating a claim of error based on the refusal of an instruction we determine if the proposed instruction is a correct statement of the law, is not covered by other instructions, and is required by the issues. *Williams*, 481 N.E.2d 1319. In this case the parts of the requested instruction which were required by the issues, namely, the presumption of innocence, burden of proof, and reasonable doubt, were adequately covered by other instructions. In addition, the judge, as well as the prosecutor, informed each group of three prospective jurors that a death penalty trial was split into guilt and penalty phases and that the parties were required to discuss the death penalty with them before trial because they would not have that opportunity later, and that the death penalty would not be an issue unless there was a finding of guilt on one of the murder charges. Appellant's requested instruction was not necessary and appellant was not prejudiced by its refusal. We find no error.

## XIV.

■ Appellant next claims that the trial court improperly denied his Motion for Appointment of Co–Counsel, arguing that his case would have been better defended by two attorneys. We recognize here that Ind.Crim.Rule 24, adopted by this Court November 30, 1989, and effective January 1, 1990, requires that two attorneys be appointed to represent a defendant in a capital case and sets out extensive criteria as to their qualifications, workload, and compensation. At the time of appellant's trial, however, there was no such requirement under Indiana law, and neither is representation by two attorneys constitutionally required. We also reject appellant's contention that representation by one attorney in a capital case is tantamount to the denial of counsel. Appellant points to no specific instance in which he was prejudiced by the lack of co-counsel and we cannot find that the trial court erred in denying appellant's motion.

## XV.

■ Appellant next challenges the trial court's denial of his Motion to Allow Defendant to Address the Jury. Appellant wished to participate in *voir dire* and to present argument to the jury during the penalty phase. In support of his motion appellant cites us to I.C. 35–38–1–5, which provides that when a defendant appears for sentencing he may make a statement on his own behalf before sentence is pronounced. As the trial court is the sentencer in Indiana, however, I.C. 35–38–1–5 does not provide a defendant the right to speak to the jury. Appellant was afforded the opportunity to make a statement at his sentencing. We find no error.

## XVI.

■ Appellant claims that rights guaranteed by the Eighth and Fourteenth Amendments were violated by the trial court by informing the jury that its determination at the penalty phase would be a recommendation. The trial court mentioned the nature of the jury's role in sentencing twice during *voir dire* and then used the word "recommendation" several times in its preliminary instruction at the penalty phase. The prosecutor also briefly mentioned the jury's role in sentencing during his opening statement in the penalty phase. Appellant claims that the jury's responsibility for imposing the death penalty was thus impermissibly diminished. We disagree. The information given by the

court was in the nature of a "housekeeping" instruction, except for one short discussion with a prospective juror who was dismissed. Nothing said by the trial court or the prosecutor implied to the jury that it should feel less responsible for its determination at the penalty phase because any mistakes it might make would be corrected by a reviewing body. *See Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). Further, no objection to such instruction was made by defense counsel, and defense counsel himself tendered Defendant's Instruction No. 8 (Penalty Phase) which twice refers to the jury's role as a recommendation. We find no error here.

## XVII.

 Appellant challenges the trial court's admission of a statement given by him in police custody after his arrest arguing that it was given involuntarily after appellant requested counsel. The record discloses that appellant was advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), signed a written waiver of those rights, and indicated on several occasions that he understood his rights. Record at 2684. After signing the waiver, but before questioning began, appellant engaged in the following discussion with State Police Officer Blaine Butler and Sheriff Dennis Rice:

Art: Yea, probably end up getting a lawyer later, I guess

Dennis: Do you understand, you understand what your rights are then

Art: Oh, yea, yea, yea

Dennis: Are you willing to talk to us now without an attorney present

Art: Yea

Dennis: You be willing to talk with us a little bit

Art: Yea, a little bit, I, I figure

Dennis: You know you still have these rights

Art: Yea

Blaine: You can stop answering at any time is what it amounts to

Art: I'll tell you anything who's going to get a lawyer at midnight

Dennis: Well, if you feel that you want a lawyer, before you talk to us, you have that right, you understand that don't you

Art: Yea, yea I understand

Dennis: If you feel you need a lawyer before you talk to us you have the right to have that

Art: A, I'll have to have one appointed for me anyway cause you know, I don't have any money to hire one

Dennis: Ok, but do you want to wait until a lawyer's appointed for you or you want to go ahead and talk to us a little bit now or

Art: What kind of information do you want to know

Record at 3417–18. The thrust of appellant's argument is that in this colloquy he invoked his right to counsel and that a waiver of that previously invoked right cannot be established merely by showing that he responded to further police initiated interrogation. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Sleek v. State* (1986), Ind., 499 N.E.2d 751.

In order to find that a confession made without the advice of counsel during custodial interrogation is admissible, the trial court must find that the defendant's Fifth Amendment privilege against self-incrimination has been knowingly, voluntarily, and intelligently waived. *Jackson v. State* (1980), 274 Ind. 297, 411 N.E.2d 609. It is uncontested that appellant's confession was obtained during custodial interrogation. He signed a written waiver of rights after having been read an Advice of Rights. There was no showing that the waiver was extracted by any sort of threats or violence nor obtained by any direct or implied promises nor by the exertion of any improper influence. His statements, made after signing the waiver and

before the start of interrogation, showed a sufficient understanding of the continuous nature of his right to have counsel present during interrogation, and the ambiguity within them does not convey a desire to deal with the authorities only through counsel. *See Cox v. State* (1986), Ind., 493 N.E.2d 151.

### XVIII.

Appellant argues that the trial court erred in admitting into evidence State's Exhibits Nos. 73-75, photographs of each of the three victims on the morgue table prior to autopsy, and State's Exhibits Nos. 84-93, transparencies of the victims on the morgue table prior to autopsy. Appellant claims that these exhibits were cumulative of photographs and transparencies introduced earlier, gruesome, inflammatory, and unduly prejudicial. Once it is established that a photograph is an accurate depiction of that which it is intended to portray, its admissibility turns on the question of relevancy. Photographs are relevant if they depict scenes that a witness is permitted to describe in their testimony. A relevant photo will be admitted into evidence unless its relevancy is outweighed by its tendency to inflame the passions of the jury. *Games v. State,* Ind., 535 N.E.2d 530, *cert. denied,* 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 158 (1989).

State's Exhibits Nos. 73-75 were admitted during the testimony of Montgomery County Coroner Laren Myers, who testified that they were true and accurate representations of the conditions of the bodies at the time he delivered them to the morgue. He also testified as to any changes in their condition from the time he removed the bodies from the crime scene. State's Exhibits Nos. 84-93 were admitted during the testimony of Dr. John Pless, the forensic pathologist who conducted and supervised the autopsies. He identified the bodies of the victims as those upon which the autopsies were performed, described the various injuries represented, and testified as to the causes of death. The challenged exhibits are therefore relevant, and they are not cumulative, as the previously admitted photographs depicted the bodies as they were found at the crime scene. Their probative value is not outweighed by any prejudicial effect, and the trial court did not err in admitting them into evidence. *See Russell v. State* (1981), Ind., 419 N.E.2d 973.

### XIX.

Appellant challenges his conviction of feticide as being contrary to law. He maintains that the feticide statute, I.C. 35–42–1–6, was enacted to punish those who perform illegal abortions and cannot reasonably be applied to a crime in which the sole act was the killing of a pregnant woman and in which there was no evidence that the defendant intended to harm the fetus. Appellant also claims that feticide is a factually included lesser offense of murder in this case.

I.C. 35–42–1–6 states:

A person who knowingly or intentionally terminates a human pregnancy with an intention other than to produce a live birth or to remove a dead fetus commits feticide, a class C felony. This section does not apply to an abortion performed in compliance with IC 35–1–58.5.

The feticide statute is contained in chapter 1 of article 42, Homicide, and its language exempts legal abortions. The chapter which contains the provisions regulating abortion is I.C. 35–1–58.5. Section 4 of that chapter makes it a Class C felony to knowingly or intentionally perform an abortion not expressly provided for in that chapter (or a Class A misdemeanor for a physician who performs an abortion intentionally or knowingly in violation of section 2(1)(C) or section 2.5 of that chapter). A proper construction of the feticide statute, therefore, requires that it be viewed not as an illegal abortion statute, but as an extension of the laws of homicide to cover the situation in which the victim is not a "human being" as defined by I.C. 35–41–1–14 (an individual who has been born and is alive), but a fetus.

Appellant also argues that the language "with an intention other than to produce a live birth or to remove a dead fetus" must be understood to require that the termination of the pregnancy be accomplished with a specific intent to kill the fetus. This interpretation is problematic, and upon analysis cannot stand, because it is contrary to the express language employed by the legislature in providing that an accused could be convicted of feticide if he knowingly terminated a human pregnancy. In conjunction with it, I.C. 35–41–2–2(b) states that a person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. To be sure, penal statutes must be strictly construed against the State, but a statute should not be overly narrowed so as to exclude cases fairly covered by it and should be interpreted so as to give efficient operation to the expressed intent of the legislature. *State v. Bigbee* (1973), 260 Ind. 90, 93, 292 N.E.2d 609, 611. Appellant's reading of the statute would render it a nullity in significant part. A better reading of the language "with an intention other than to produce a live birth or to remove a dead fetus" would hold that the legislature did not intend to exclude "knowing terminations" from coverage after expressly including them, but to set out, in addition to abortions, two kinds of "intentional terminations" that are not to be considered criminal acts. It would be absurd to have a feticide statute that technically prohibits obstetricians from inducing labor or removing a dead fetus. The questioned language does not require that the accused have a specific intent to kill the fetus but merely exempts two obvious, noncriminal intentions. We reject appellant's claim of error on that basis.

Appellant also claims that feticide is a factually included offense of murder in this case, because the lesser offense, which is not an inherently included offense, is factually charged in the information charging appellant with the murder of Nadine Baird. The element of "termination of a human pregnancy" that is necessary to a feticide conviction, however, is not alleged in the murder information, although we do not dispute that appellant did cause the termination of his wife's pregnancy by strangling her. Thus, feticide is not a factually included offense of murder and appellant was not improperly convicted of both charges. I.C. 35–41–1–16; *McGill v. State* (1984), Ind.App., 465 N.E.2d 211.

We affirm appellant's convictions for murder and feticide and the imposition of the respective sentences.

SHEPARD, C.J., and GIVAN, DICKSON and KRAHULIK, JJ., concur.