# In the
# Indiana Supreme Court

| | | |
|---|---|---|
| Arthur P. BAIRD, | ) | Supreme Court Cause No. |
| Petitioner, | ) | 54S00-0505-SD-240 |
| | ) | |
| v. | ) | Montgomery Circuit Court |
| | ) | Cause No. CR85-66 |
| STATE of Indiana, | ) | |
| Respondent. | ) | |

### ORDER CONCERNING SUCCESSIVE PETITION
### FOR POST-CONVICTION RELIEF IN CAPITAL CASE

**Introduction**

Petitioner Arthur P. Baird stands convicted of three counts of murder and sentenced to death after having completed the review to which he is entitled as a matter of right. Baird now requests permission to litigate additional collateral claims in state court, the primary focus of which is the claim he should not have been sentenced to death because he was mentally ill when he committed the murders. Because we conclude Baird has not shown a reasonable possibility he is entitled to relief, we deny his request.

**Background**

On the evening of September 6, 1985, Baird strangled his pregnant wife, Nadine. In telephone conversations that evening, he lied to Nadine's mother, telling her that Nadine was sick. The next morning, Baird stabbed and killed his parents, Kathryn and Arthur I. Baird was arrested the following day as he sat watching a baseball game. He confessed the killings to police, saying he had lost control and had just gone "berserk." Evidence showed Baird believed the federal government was about to pay him $1 million for his advice on how to solve the national debt, and that he had made plans to use the money to purchase a farm for $575,000, the closing for which was scheduled for September 7. In fact, Baird was in debt and had been laid off recently from a factory job. There was no evidence of any financial motive for the murders or of any bad relationship between Baird and the victims.

Various psychiatrists and other mental health professionals examined Baird. Baird described himself to them as having no motive in committing the murders. He told them that he had tried to resist the compulsion to kill but had been unable to overcome it. One psychiatrist opined that Baird had been legally insane when he committed the murders. The others opined that he had had the requisite capacity to appreciate the wrongful nature of his conduct. They all opined his ability to conform his actions to the requirements of the law had been impaired by a mental illness, though the precise nature of the illness was variously described.

Baird was charged with three counts of murder and one count of feticide. *See* I.C. § 35-42-1-1(1) (murder) and I.C. § 35-42-1-6 (feticide). The State sought the death penalty, alleging

the multiple murders as the aggravating factor that made Baird eligible. *See* I.C. § 35-50-2-9(b)(8). He was offered a plea agreement that called for a term of years, but on the day scheduled for the hearing, he told the trial court he had changed his mind about accepting it. Trial Record at 600.

At the conclusion of the guilt phase of the trial, the jury rejected the options of finding Baird not guilty by reason of insanity or guilty but mentally ill. *See* Ind. Code § 35-41-3-6 ("A person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense); I.C. 35-36-1-1 ("'Mentally ill'" means having a psychiatric disorder which substantially disturbs a person's thinking, feeling, or behavior and impairs the person's ability to function."). Instead, the jury found Baird guilty as charged.

At the conclusion of the penalty phase, the jury unanimously recommended the death sentence be imposed for the murders of Baird's mother and father, but recommended the death sentence not be imposed for the murder of his wife. *See* I.C. § 35-50-2-9(e) (providing that a jury may recommend the death penalty only if it finds the state has proved the aggravating circumstance beyond a reasonable doubt and that any mitigating circumstances are outweighed by the aggravating circumstance.).

The Montgomery Circuit Court followed the jury's recommendation and sentenced Baird to death. The trial court also imposed a sixty-year sentence for the murder of Baird's wife and an eight-year sentence for the feticide.

The convictions and sentences were affirmed at each stage of subsequent review. On direct appeal, we addressed at some length Baird's argument that in sentencing him to death, the trial court had erred in refusing to consider two mitigating circumstances: whether Baird "was under the influence of extreme mental or emotional disturbance when the murder was committed," and whether his "capacity to appreciate criminality of [his] conduct or to conform that conduct to the requirements of law was substantially impaired as a result of mental disease or defect." *See* I.C. § 35-50-2-9(c)(2) & (c)(6). We independently reweighed the aggravating and mitigating circumstances, and determined the death sentence was appropriate for the murder of Baird's parents:

> [W]e are inclined to find that appellant's mental condition at the time of the murders of his parents is entitled to some mitigating value. The psychiatric evidence supports a determination that appellant has an obsessive-compulsive disorder. The testimony was uncontradicted that appellant sincerely believed that the federal government was going to give him one million dollars for his ideas on how to solve the country's economic problems, and that he and Nadine would use the money to purchase and equip a 253 acre farm. There was no basis in experience for this belief. At this time appellant had no income, was in debt, and Nadine was pregnant. Appellant was so obsessed with the idea of buying this farm that he set a closing date at which time he was to tender a $50,000 certified check, and as he finally realized that his grandiose plans would be exposed as a mere fantasy to the persons whose derision would be most destructive to him he

2

was compelled to protect himself from them. We find that appellant was under the influence of extreme mental or emotional disturbance when the murders were committed, but find this mitigating factor to be in the low range. We also find that the mitigating circumstances of appellant's regular employment, church participation, military service, law abiding nature, and good character in the community each to be in the low range. Appellant's lack of prior criminal history is a mitigating factor in the medium range. Upon review, we find that these mitigating circumstances as we have determined and evaluated them are outweighed by the sole aggravating circumstance, namely, the murders of Kathryn and Arthur Paul Baird, I, having already committed the murder of Nadine Baird, an aggravating circumstance in the highest range. Appellant's sentence is not arbitrary or capricious and is not manifestly unreasonable.

Baird v. State, 604 N.E.2d 1170, 1182 (Ind. 1992), *reh'g denied* (1993), *cert. denied*, 510 U.S. 893 (1993). In the post-conviction appeal, Baird claimed the jury would not have recommended the death penalty had it heard the opinion of another mental health expert that Baird suffered from a "delusional disorder" that rendered him unable to control his behavior, but we concluded:

[E]ven if the jury, and this Court on direct appeal, did not know that "delusional disorders" as such existed, each was equipped with the facts of Baird's bizarre conduct and with the psychiatrists' conclusions that Baird was volitionally impaired. [The new testimony] simply does not mandate a new interpretation of the facts. . . . The testimony to which Baird points is cumulative not pathbreaking and provides no assurance that a different result would probably have been reached. Accordingly, Baird's claim that the death sentence was excessive, disproportionate, or inappropriate is barred by res judicata, and the standard for revisiting the issue based on new evidence is not met.

Baird v. State, 688 N.E.2d 911, 914-15 (Ind. 1997), *reh'g denied* (1998), *cert. denied* 525 U.S. 849 (1998). We affirmed the trial court's judgment denying relief.

The federal district court denied a petition for writ of habeas corpus in Baird v. Davis, No. TH 98-70-C-M/F (S.D. Ind. Jul. 17, 2003) (unpublished order), *affirmed in* Baird v. Davis, 388 F.3d 1110 (7th Cir. 2004), *cert. denied*, 543 U.S. ____, 125 S.Ct. 1849 (Apr. 18, 2005). As to Baird's mental illness, the Seventh Circuit Court of Appeals noted that the United States Supreme Court has not yet ruled out the execution of persons who kill under an irresistible impulse and has made clear that in balancing aggravating and mitigating circumstances, courts are not required to give any fixed weight to any particular mitigating circumstance. The majority view of that court also called Baird's claim that we had overlooked the relevant mitigating circumstance in Indiana Code § 35-50-2-9(c)(6) as having no merit. 388 F.3d at 1117.

Baird has thus completed the review of the convictions and death sentence to which he is entitled as a matter of right. We have jurisdiction because Baird is sentenced to death. *See* Ind. Appellate Rule 4(A)(1)(a).

**Indiana's Post-Conviction Rules**

As just indicated, Baird has already availed himself of our rule that permits a person convicted of a crime in an Indiana state court one collateral review of a conviction and sentence in a post-conviction proceeding. *See* Ind. Post-Conviction Rule 1. To litigate another or "successive" post-conviction claim, Baird needs our permission. We will authorize such a proceeding to go forward only "if the petitioner establishes a reasonable possibility that the petitioner is entitled to post-conviction relief." P-C.R. 1 (12)(b). In deciding whether Baird has made the required showing, we consider the applicable law, the petition, materials from his prior appeals and post-conviction proceedings including the record, briefs and court decisions, and any other material we deem relevant. *See id.*

Baird, by counsel, has filed a "Motion For Permission to Proceed on a Successive Post-Conviction Relief Petition," and has tendered a "Proposed Successive Petition For Post-Conviction Relief." The State filed its "Verified Response in Opposition to Motion for Permission to Proceed on a Successive Post-Conviction Relief Petition," and Baird was allowed to file "Arthur Baird's Reply."

Baird's lengthy, 71-page petition does not follow the form prescribed by our rules. *See* P-C. R. 1 (12)(a); Appendix to Rule PC 1. In particular, the petition does not concisely state his claims and distilling them has been difficult, but we have endeavored to address them nevertheless.

**The Claims**

**1. Baird's mental illness does not render the death sentence illegal.** We discern Baird's general claim to be that he should not have been sentenced to death because he was mentally ill when he committed the murders. As explained below, we conclude the claim is procedurally defaulted because it was not raised in his earlier appeals, is barred by the doctrine of *res judicata* because it has already been decided against him, or is without merit. We do not discern a claim that Baird is presently not competent to be executed, and in any event, Baird has not shown he would be entitled to such protection.

**a. Baird has not shown he is entitled to relief under international law.** Baird claims that international treaties, agreements to which the United States is a party and customary international law prohibit death sentences for mentally ill persons. *See* Proposed Successive Petition (hereafter "Succ. Pet.") at 12-16. This claim appears to have been available to Baird at least as early as his first post-conviction proceeding, and Baird provides no support for his assertion that it was not. *See, e.g.,* Reply at 3. Though he cites some materials published after his state-court proceedings, the general tenor of those materials was widely available earlier and we are not convinced that international law on the subject of the execution of mentally ill persons has significantly changed since his earlier appeals to us. As such, this claim is procedurally defaulted. *See* Stevens v. State, 770 N.E.2d 739, 761 (Ind. 2002) (summarily denying prisoner's challenge that Indiana's lethal injection procedure violates international law; claim was procedurally defaulted in post-conviction proceedings because the claim had been available on direct appeal but not raised).

4

Even were we to consider this claim on the merits, we would conclude that Baird has not met the required showing of reasonable possibility of success. He cites three documents as prohibiting his execution: the International Covenant on Civil and Political Rights (the "Covenant"), the Universal Declaration of Human Rights (the "Declaration"), and the Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment ("CAT"). None of these documents specifically discuss execution of mentally ill persons. In addition, prisoners like Baird lack standing to claim relief under the documents. *See, e.g.,* Sosa v. Alvarez-Machain, 542 U.S. 692, ___, 124 S.Ct. 2739, 2767 (2004) (holding that the Declaration does not of its own force impose obligations as a matter of international law, and though the Covenant is a binding source of international law, the United States ratified the Covenant on the express understanding that it did not itself create obligations enforceable in American courts).

**b. Baird has not shown he is entitled to relief under the Eighth Amendment to the United States Constitution.** Baird argues that sentencing to death a person who has a mental illness is contrary to the Constitution's Eighth Amendment, which prohibits "cruel and unusual punishment." *See* Succ. Pet. at 17-37. In his two prior appeals, we rejected various claims Baird raised that the death sentence was excessive, disproportionate, or inappropriate. *See* Baird v. State, 604 N.E.2d at 1182-84 (direct appeal); Baird v. State, 688 N.E.2d at 913-15 (post-conviction appeal). To the extent Baird's present claim is the same as those we have already decided, his present claim is barred by the doctrine of *res judicata. See, e.g.*, Wallace v. State, 820 N.E.2d 1261, 1263 (Ind. 2005); Stevens, 770 N.E.2d at 746. To the extent the claim was available to Baird in his prior proceedings but was not raised then, the claim is procedurally defaulted. *See, e.g.*, Wallace, 820 N.E.2d at 1264; Stevens, 770 N.E.2d at 746.

What remains is Baird's assertion that "evolving standards of decency," "changes in the legal landscape," and "the development of a national consensus" since his state-court proceedings are such that a death sentence now constitutes cruel and unusual punishment for a person with a mental illness. We conclude Baird has not met his burden of showing a reasonable possibility of relief on this claim.

The United States Supreme Court has held that a death sentence is an unconstitutional punishment for persons who are insane, *see* Ford v. Wainwright, 477 U.S. 399, 410, 106 S.Ct. 2595, ___ (1986), who are mentally retarded, Atkins v. Virginia, 536 U.S. 304, 321, 122 S.Ct. 2242, 2252 (2002), and who are juveniles, *see* Roper v. Simmons, ___ U.S. ___, 125 S.Ct. 1183, 1194 (2005). But as the Seventh Circuit Court of Appeals noted, the Supreme Court "has not yet ruled out the execution of persons who kill under an irresistible impulse." Baird v. Davis, 388 F.3d at 1114. We decline to recognize a new exception under the Eighth Amendment in Baird's case.

**c. Baird has not shown he is entitled to relief under Indiana law.** Baird argues that sentencing to death a person who suffers from a serious mental illness is contrary to Article I, section 16 of the Indiana Constitution, which states, in part, that "[c]ruel and unusual punishments shall not be inflicted" and "[a]ll penalties shall be proportioned to the nature of the offense." *See* Succ. Pet. at 40-53. We have already considered and rejected the various claims Baird raised in his direct appeal and post-conviction appeal about whether the death sentence

was excessive, disproportionate, or inappropriate. To the extent Baird's present claim is the same as those we have previously decided, it is barred by the doctrine of *res judicata. See, e.g.*, Wallace, 820 N.E.2d at 1263. To the extent the claim was available to Baird in those prior appeals but was not raised, the claim is procedurally defaulted. *Id.* at 1264.

As with his Eighth Amendment claim, what remains is Baird's assertion that "evolving standards of decency," "changes in the legal landscape," and "the development of a consensus" in Indiana since his prior state-court proceedings are such that a death sentence for a person with a mental illness violates the state constitution. We conclude Baird has not met his burden of showing a reasonable possibility of relief on this claim.

Indiana's death penalty scheme takes into account a person's mental health, as Baird's case demonstrates. A jury may decide the defendant is not guilty by reason of insanity or guilty but mentally ill. Once convicted, a defendant's mental status is considered again in the penalty phase as a mitigating circumstance. *See* I.C. § 35-50-2-9(c). In Harris v. State, 499 N.E.2d 723, 727 (Ind. 1986), this Court held that sentencing to death a defendant found guilty but mentally ill was not unconstitutional. A more recent decision noted that no other defendant who had been found guilty but mentally ill had been sentenced to death. *See* Prowell v. State, 741 N.E.2d 704, 718 n.8 (Ind. 2001). But this fact does not render Baird's death sentence unconstitutional. In any event, Baird's jury rejected the option of finding him guilty but mentally ill. *See also* Corcoran v. State, 774 N.E.2d 495 (Ind. 2002) (affirming death sentence on direct appeal for quadruple killing by defendant diagnosed with schizotypal personality disorder; rejecting argument that death sentence was manifestly unreasonable). We decline to decide that developments since Harris render the death penalty unconstitutional for Baird.

**2. Baird was not abandoned by counsel in his first post-conviction proceeding.** Baird claims his attorney made two mistakes during the first post-conviction proceeding by failing: (a) to argue that we had not considered the mitigating circumstances in Indiana Code § 35-50-2-9(c)(6); and (b) to challenge whether jurors might have allowed their own knowledge of Baird to influence their decision to sentence him to death.

Because Baird challenges the performance of his post-conviction attorney, his claims are subject to Graves v. State, 823 N.E.2d 1193, 1195-97 (Ind. 2005). In Graves, we discussed the multiple safeguards concerning counsel for criminal defendants, and noted that post-conviction proceedings, which are not criminal actions, need not be conducted under the same standards for trial and appellate counsel stated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Instead, we reiterated that the standard is whether "counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court," and we reaffirmed our prior holding that a claim of defective performance in a post-conviction proceeding "poses no cognizable grounds for post-conviction relief." Graves, 823 N.E.2d at 1196 (noting however, that a contention that petitioner's post-conviction counsel did not provide adequate legal assistance could provide a prisoner with a basis for replying to a state claim of prior adjudication or abuse of process).

**a. Our consideration of mitigating circumstances.** Baird claims his post-conviction counsel was ineffective because counsel failed to direct our attention to the mitigating

6

circumstance in Indiana Code § 35-50-2-9(c)(6), as a result of which, Baird asserts, we failed to consider the evidence that Baird had been unable to conform his conduct to the requirements of the law when he murdered his parents. *See* Succ. Pet. at 55-64.

Counsel appeared for Baird in the post-conviction proceeding and filed a 98-page brief in the appeal that followed, much of which was devoted to arguing the death sentence was error. Clearly, Baird was not abandoned by counsel. Under the standard discussed in Graves, he has no cognizable claim.

To the extent Baird asserts a free-standing claim that we committed error by not considering the (c)(6) mitigator, the claim is procedurally defaulted for not having been raised in the direct appeal or the post-conviction appeal. *See, e.g.,* Conner v. State, 829 N.E.2d 21, 24 (Ind. 2005); Stevens, 770 N.E.2d at 746.

This claim is also barred by the doctrine of *res judicata*. The Seventh Circuit majority expressly rejected it as having no merit. *See* Baird v. Davis, 388 F.3d at 1117. We addressed the propriety of Baird's sentence and discussed the evidence that Baird was "volitionally impaired" at some length in both appeals. *See* Baird v. State, 604 N.E.2d at 1182-84 (direct appeal); Baird v. State, 688 N.E.2d at 913-14 (post-conviction). We did not exclude consideration of the (c)(6) mitigating circumstance. Rather, we gave that circumstance less weight than Baird advocated. To the extent Baird requests that we review his sentence again, we decline.

**b. Jurors who knew or may have known Baird from work.** Baird asserts that jurors who had worked for the same company as Baird (or were married to people who had) may have had information about Baird's behavior that may have influenced their reaction to the evidence concerning Baird's mental health and this information may have been shared with other jurors during deliberations. *See* Succ. Pet. at 64-69. Baird claims post-conviction counsel's failure to investigate and raise this claim denied him a procedurally fair post-conviction proceeding.

Baird fails to state a cognizable claim under Graves. Baird's petition shows that post-conviction counsel investigated a potential claim of this nature by contacting at least one of the jurors. That counsel chose not to present claims counsel believed would not likely prevail is neither abandonment by counsel nor did that decision deprive Baird of a procedurally fair post-conviction proceeding. *Cf.* Bieghler v. State, 690 N.E.2d 188, 194 (Ind. 1997) ("[T]he reviewing court should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made.") To the extent Baird's highly speculative claim includes the performance of trial or appellate counsel, the claim is procedurally defaulted. *See* Stevens, 770 N.E.2d at 746.

## Conclusion

Baird has not met his burden of establishing a reasonable possibility that he is entitled to post-conviction relief. Accordingly, we decline to authorize the filing of a successive petition for post-conviction relief. A date for execution of the death sentence will be set by separate order.

7

The Clerk is directed to send a copy of this order to all counsel of record and to West Group for publication in the bound volumes of this Court's decisions.

Done at Indianapolis, Indiana, this 19th day of July, 2005.

/s/Randall T. Shepard
Chief Justice of Indiana


Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.
Rucker, J., concurs with separate opinion.


Rucker, J., concurring.

Largely for the reasons the majority expresses, I concur with the decision to deny Baird's request to file a successive petition for post-conviction relief. I write separately only to emphasize that Baird makes no claim based on his present mental state. I continue to believe that a sentence of death is inappropriate for a person suffering a severe mental illness. See Corcoran v. State, 774 N.E.2d 495, 502 (Ind. 2002) (Rucker, J., dissenting). However, nowhere in his lengthy petition does Baird contend that he is now mentally ill and thus should not receive the ultimate penal sanction. Instead, Baird makes a variety of claims based on his mental illness at the time of the murders. But some of these claims already have been decided against Baird in earlier appeals. And others could have been raised in those same appeals but were not. In either event they are not now available for collateral review. With this additional understanding, I agree Baird has not met his burden of establishing there is a reasonable possibility that he is entitled to post-conviction relief.

8