# In the
# Indiana Supreme Court

Arthur Paul BAIRD,                                    )          Supreme Court Cause No.
         Petitioner,                              )          54S00-0505-SD-240
                                                )
         v.                                      )          Montgomery Circuit Court
                                                )          Cause No. CR85-66
STATE of Indiana,                                     )
         Respondent.                             )

### ORDER CONCERNING SECOND SUCCESSIVE
### POST-CONVICTION PETITION IN CAPITAL CASE

Having completed the judicial review to which he is entitled as a matter of right, Petitioner Arthur Baird remains convicted of three counts of murder and sentenced to death. Execution of the death sentence is set for August 31, 2005 "before sunrise."

Baird has now filed numerous papers, the core of which is a claim that he is "presently incompetent to be executed" under Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595 (1986). The State opposes Baird's request for relief.[1] We have jurisdiction because Baird is sentenced to death. *See* Ind. Appellate Rule 4(A)(1)(a).

Ford v. Wainwright holds that the Eighth Amendment prohibits a state from executing persons who are insane at the time of execution. 477 U.S. at 409-10, 106 S.Ct. at 2601-02. In this context, persons are insane if they are "unaware of the punishment they are about to suffer and why they are to suffer it." *See, e.g.,* Penry v. Lynaugh, 492 U.S. 302, 333, 109 S.Ct. 2934, 2954 (1989) (effectively adopting Justice Powell's definition of insane from his concurring opinion in Ford), *abrogated in part on other grounds in* Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242 (2002); *accord* Order, Fleenor v. State, No. 41S00-9910-MS-625 (Ind. Dec. 6, 1999) (unpublished; applying Ford standard of insanity to prisoner's successive post-conviction claim). At this stage of the proceedings, there is a presumption that the prisoner is sane. Ford, 477 U.S. at 426 (Powell, J., concurring) (when prisoner was competent to stand trial, "[t]he State . . . may properly presume that petitioner remains sane at the time sentence is to be carried out, and may

---

[1] Baird filed: "Verified Motion For Psychiatric Evaluation;" "Petitioner's Verified Request Regarding Competency To Be Executed And Petitioner's Motion For Immediate Stay Of Execution;" "Motion For Order To Notify;" "Proposed Successive Petition For Post-Conviction Relief;" "Reply On Second Successor Request And Other Related Pleadings;" "Tender Of Supplemental Authorities" filed August 5, 2005; "Request For Funding And Hearing;" "Notice Of Tender" with affidavits filed August 5, 2005; "Tender Of Supplemental Authority" filed August 10, 2005; "Notice Of Tender" with Psychiatric Evaluation filed August 22, 2005; and "Baird's Response To Respondent's Tender And Reply To Respondent's 'Response To Petitioner's Tender Of Additional Materials'" filed August 25, 2005. The State filed: "Response To Verified Request Regarding Competency, Motion For Immediate Stay, And Verified Motion For Psychiatric Evaluation;" Response To Petitioner's Tender Of Additional Materials" filed August 22, 2005; and "Submission Of Videotaped Interview Of Petitioner" filed August 22, 2005.

require a substantial threshold showing of insanity to trigger the hearing process." (footnote omitted)); *see also* Coe v. Bell, 209 F.3d 815, 820 (6th Cir); *accord* Order, Fleenor, at 1-2.

A claim such as Baird's is among those that our post-conviction rule on successive post-conviction petitions was designed to address. *See* Ind. Post-Conviction Rule 1(12); Order, Fleenor, at 2. Under our rule, a person who has been convicted of a crime may be permitted additional post-conviction review even after the conclusion of review to which the person is entitled as a matter of right, i.e., direct appeal and a first post-conviction proceeding. A Ford claim is one that by its nature arises after the usual channels of appeal have been exhausted. *See, e.g.*, Stewart v. Martinez-Villareal, 523 U.S. 637, 645, 118 S.Ct. 1618, 1622 (1998). Baird exhausted those appeals in April when the United States Supreme Court denied his petition for a writ of certiorari in his federal habeas appeal. Baird could have raised his Ford claim in the first successive post-conviction petition he presented to us the next month because an order from this Court setting an execution date was imminent. Nonetheless, we consider Baird's claim that he may not be executed consistent with Ford.

Because Baird has completed the review to which he is entitled as a matter of right,[2] he needs our permission to litigate the Ford successive post-conviction claim. We will authorize such a proceeding to go forward "if the petitioner establishes a reasonable possibility that the petitioner is entitled to post-conviction relief." P-C.R. 1 (12)(b). In deciding whether Baird has made the required showing, we consider the applicable law, the petition, materials from his prior appeals and post-conviction proceedings including the record, briefs and court decisions, and any other material we deem relevant. *See id.* If we authorize the proceeding to go forward, the case returns to the trial court for further proceedings in accordance with Post-Conviction Rule 1.

We turn to Baird's claim that he is "presently not competent for execution." As just indicated, we apply the Ford standard: persons are insane if they are unaware of the punishment they are about to suffer and why they are to suffer it. In support of the claim, Baird submitted affidavits from two attorneys and an affidavit of Howard Wooden, Ph.D., a mental health professional who examined Baird some ten years ago. *See* Notice of Tender filed August 5, 2005. Later, Baird submitted a report from Philip M. Coons, M.D., a psychiatrist who examined Baird on August 18, 2005. *See* Notice of Tender filed August 22, 2005. These materials do not support the conclusion that Baird is insane under the Ford standard, and, indeed, suggest the opposite.

Presently, according to the papers Baird has filed, he "knows that he is sentenced to die for killing his wife and parents, only because he has been told such by the jury, judge, and society," but "[h]e does not know intellectually or emotionally why he is to suffer the death

---

[2] We affirmed Baird's convictions and sentence on direct appeal in Baird v. State, 604 N.E.2d 1170 (Ind. 1992), *reh'g denied* (1993), *cert. denied*, 510 U.S. 893 (1993). We affirmed the trial court's judgment denying collateral state post-conviction relief in Baird v. State, 688 N.E.2d 911 (Ind. 1997), *reh'g denied* (1998), *cert. denied* 525 U.S. 849 (1998). The federal district court denied his petition for writ of habeas corpus in Baird v. Davis, No. TH 98-70-C-M/F (S.D. Ind. Jul. 17, 2003) (unpublished order), which denial was affirmed by the Court of Appeals for the Seventh Circuit in Baird v. Davis, 388 F.3d. 1110 (7th Cir. 2004), *cert. denied*, 125 S.Ct. 1849 (Apr. 18, 2005). In addition, we recently denied Baird's first successive post-conviction petition in Baird v. State, 831 N.E.2d 109 (Ind. Jul. 19, 2005).

penalty." Request for Stay at 3, ¶ 6. One attorney gives details about some of Baird's recent behaviors and her interpretation of that behavior. As one example, when the attorney informed Baird of his execution date, he expressed concern about whether he was being charged too much for a newspaper subscription. *See* Nagy Aff. at ¶ 7. This attorney "has reason to believe that Mr. Baird is unable to prepare for death because of deep denial systems in place with his mental illness." *Id.* The attorney also states Baird "believes that God will turn back the clock to before the killings, as a reward for him not acting out on his bad thoughts while in prison." *Id.* at ¶ 2. To this attorney, Baird's behavior shows he "does not comprehend why or how he can be executed when he did not commit the murders, but when a 'big, burly man' moved his arms during the killings," and that he "is unable to experience culpability, and is therefore unable to fully understand the nature of the penalty." *Id.* at ¶ 6. The other attorney states her belief that Baird's "preoccupation with matters relevant to a time period following the anticipated date of his execution is further indication of his inability to comprehend the reasons for the impending execution, appreciate the finality of the death penalty and prepare himself for death." Cook Aff. at ¶ 9.

Neither of these attorneys is a mental health expert. As to Baird's claim that his execution will violate Ford, neither of their affidavits indicate that Baird is unaware of the punishment he is about to suffer and why he is to suffer it. Rather, Baird's references to God's turning back the clock to a time before he murdered his parents indicates that he is aware and why.

Dr. Wooden is a mental health expert, but he last examined Baird ten years ago. At that time, Wooden opined Baird had suffered "an acute psychotic break" when he committed the murders and had been unable to control his actions or appreciate the wrongfulness of his conduct. The opinion is relevant to whether Baird was not guilty by reason of insanity—an option the jury rejected at his trial—but does not address the Ford standard. Wooden states that if Baird "has ongoing delusional thinking, such as was present when I last examined him, he would be unlikely to be able to adequately comprehend the reasons for his execution as such thinking diminishes his capacity to distinguish between reality and the delusions." Wooden Aff. at ¶ 9. This supposition relates to the question of Baird's present status, but again, it does not address the Ford standard. Dr. Wooden does not offer an opinion that Baird actually is unaware of the punishment he is about to suffer and why he is to suffer it.

Dr. Coons examined Baird on August 18, 2005, for the purpose of determining Baird's competence to be executed, and offered his own observations in the Psychiatric Evaluation, as follows: (1) Baird has a delusional disorder, meaning he has persistent, fixed false beliefs, and this disorder has worsened since the murders (for example, Baird believes that God will turn back time to before the murders, his wife and parents will be alive, the federal debt will be extinguished, and Baird will be paid $1 million); (2) Baird has had obsessive-compulsive disorder characterized by recurrent intrusive thoughts and recurrent repetitive actions, and his obsessions have consisted of various aggressive thoughts and impulses to commit crimes, but the obsessions have diminished during incarceration; (3) Baird had an unspecified "dissociative disorder" at the time of the murders, but does not currently; (4) Baird does not have a personality disorder although he has schizoid and schizotypal traits; (5) Baird does not have antisocial personality disorder; (6) Baird is not malingering; (7) Baird "cannot feel guilt about the murders and therefore cannot make peace with God"; and (8) Baird thinks the sentence is unjust "because

3

he did not choose to murder his wife and parents" since "[h]is hands murdered his wife and parents while under the control of unseen forces and persons." *See* Notice of Tender filed August 22, 2005 (Psychiatric Report at 9-11).

A prisoner who submits an opinion from a psychiatrist, based upon a recent assessment, that the prisoner meets the Ford standard of "insane" would satisfy the burden of establishing a reasonable possibility that the petitioner was entitled to post-conviction relief. Dr. Coons concluded Baird is "currently incompetent to be executed," but this conclusion is not based on the Ford standard. Dr. Coons did not conclude that Baird is unaware of the punishment he is about to suffer and why he is to suffer it. Rather, like the others, Dr. Coons's report shows that Baird is aware he is to be executed because he murdered.

The evidence presented makes a prima facie showing that Baird may believe his execution is unfair and that he is withdrawn or uncommunicative when confronted with the fact of his scheduled execution. He may be denying to himself that it will actually occur. He may have a mental illness. But read as a whole, the evidence presented amply shows Baird knows he is about to be executed because he murdered his parents. The evidence submitted does not challenge the presumption that Baird is sane, the standard of Ford, and we thus conclude he has not met his burden of showing a reasonable possibility that he is entitled to relief or further proceedings in a trial court.

Baird's papers arguably present other successive post-conviction claims, but he has not met his burden of showing a reasonable possibility he is entitled to relief. We have already denied Baird's claims that mentally ill persons are *per se* exempt from execution under the state and federal constitutions and international law. *See* Baird v. State, 831 N.E.2d 109, 114-16 (Ind. 2005). Those claims are *res judicata* and we decline to reconsider them. To the extent Baird requests we adopt a standard of incompetency for execution other than the Ford "insane" standard, we decline. In a single sentence, Baird claims executing mentally ill persons violates the Fourteenth Amendment. *See* Successive Pet. at 5-6, ¶ 8. We presume this is a claim that execution violates a mentally ill person's right to equal protection, and we deny permission to litigate the claim because, to the extent it has not been procedurally defaulted for being raised at this late stage, Baird has not shown a reasonable possibility of relief on the merits.

Because Baird has not met his burden of establishing a reasonable possibility that he is entitled to relief on the claims presented, we decline to authorize the filing of the second successive petition. We also deny his requests for a stay of execution, for an order directing the Department of Correction to notify Baird's counsel before conducting any psychological evaluation, for appointment of mental health professionals to examine Baird, for funds to hire an independent mental health professional to examine Baird, for a hearing on his competency, and any for other relief requested in the papers before us today.

Our rules permit—but do not require—a petition for rehearing. Rehearing should not be sought if Baird intends merely to raise the same arguments we have already addressed. If he does petition for rehearing, however, the petition must be physically filed with the Clerk no later than 12:00 p.m., August 26, 2005.

4

The Clerk is directed to send a copy of this order to counsel of record and to West Group for publication in the bound volumes of this Court's decisions.

Done at Indianapolis, Indiana, this 25th day of August, 2005.

/s/ Randall T. Shepard
Chief Justice of Indiana

Shepard, C.J., and Dickson and Sullivan, JJ., concur.
Boehm, J., dissents with opinion in which Rucker, J., joins.

Boehm, J., dissenting.

It is obvious, I think, that Arthur Baird has suffered from significant mental illness dating from the time he murdered his pregnant wife and his parents in 1985. The circumstances supporting this conclusion are documented in the opinions of this Court affirming his conviction, Baird v. State, 604 N.E.2d 1170 (Ind. 1992) and affirming the denial of post-conviction relief. Baird v. State, 688 N.E.2d 911 (Ind. 1998). In short form, Baird, who had no criminal history, apparently suffered from the delusion that he was about to be paid $1 million by the federal government for his advice as to how to manage the national debt. He had arranged to buy a farm with the anticipated proceeds, and that deal was to be closed the day before the murders. A variety of expert opinion was offered at trial to the effect that he suffered from delusions. Psychiatrists were divided as to whether, at the time of the murders, he knew what he was doing and could appreciate the wrongfulness of his acts. The jury found him guilty, rejecting his insanity defense under that standard. The issue before us now is whether he is currently "insane" under the different standard of the Eighth Amendment prohibition against execution of an "insane" person.

The interpretation of the Eighth Amendment is, of course, a matter of federal constitutional law, and we are bound by the rulings of the Supreme Court of the United States on that point. Equally obviously, there is nothing in the Eighth Amendment that prevents a State from imposing a more restrictive standard for execution of persons with mental illness, or, for that matter, from doing away with the death penalty altogether. Because of its irreversibility, apart from whatever one thinks of its morality, we should err on the side of caution in carrying out an execution. The majority cites Justice Powell's concurrence in Ford v. Wainwright, 477 U.S. 399 (1986) as the standard established by the Supreme Court as the definition of an "insane" person for purposes of the Eighth Amendment. Under that formulation persons are insane and ineligible for execution if they are "unaware of the punishment they are about to suffer and why they are to suffer it." Id. at 422. For the reasons given below, I do not believe the Eighth Amendment standard is as clear as the majority would have it. But even if we accept Justice Powell's language in Ford as the definitive standard, I think the facts are sufficiently murky that we should permit Baird's petition to go forward.

Two attorneys who have dealt recently with Baird express their views that he is not competent to be executed. Obviously, their opinions are neither tied to a precise standard of "competency to be executed," nor based on any particular qualifications. His attorneys cite

5

facts that, at the very least, lead one to conclude that Baird is only marginally in touch with reality. They report that at one level he understands that an execution is scheduled, but it is not at all clear that he has internalized this information and believes that he is in fact to be executed. We now have the report of Philip Coons, M.D., a practicing psychiatrist and emeritus professor of psychiatry at Indiana University School of Medicine. Based on his interview with Baird on August 18, 2005, less than two weeks before the scheduled execution date, Dr. Coons also expresses the opinion that Baird is "incompetent to be executed." Dr. Coons expressly declines to choose among legal standards for "competency to be executed," but asserts that Baird is not malingering, is "grossly psychotic and delusional," and "cannot feel guilt about the murders." His inability to "feel guilt" is apparently based on his belief that "he did not choose to murder his wife and parents." Rather, according to Dr. Coons, Baird believes that "his hands murdered his wife and parents while under the control of unseen forces and persons." Baird also professes a belief that time will be rolled back to the point that the murders can be undone, and that God will cause this to happen. His apparent indifference to the actions one anticipating death might take (inattention to a will; savings for periods long beyond execution date) seems consistent with this.

In short, I think it is plain that Baird is insane by any ordinary understanding of that term. Whether he meets the Eighth amendment standard of insanity that precludes his execution is less clear. But whether he is "aware of the punishment" as that term appears in Ford seems to me to be at least debatable, given his apparent belief that higher powers will intercede to "roll back" time to a point antedating the murders. It is also less than clear whether a person who genuinely believes he committed the acts under the control of others understands "why" he is to be punished. Under these circumstances, I would grant Baird's request to file a successive petition for post-conviction relief to explore the issue never adjudicated in his earlier appeals, namely his current mental condition judged by the Eighth Amendment standard that prohibits execution of the insane.

The legislature in this state has made clear that it wishes to impose the death penalty in some cases, but unlike almost all other states, Indiana has no specific statutory provision addressing either the standard of insanity or any procedural requirements to guard against execution of the insane. I therefore agree with the majority that under Indiana law the Eighth Amendment remains the only substantive bar to Baird's execution. It is less clear that the oft-quoted standard from Justice Powell's concurrence in Ford is the definitive formulation of the Eighth Amendment standard for eligibility to be executed.

Writing in Ford for himself alone, Justice Powell offered the above quoted definition of insane persons as the Eighth Amendment standard. Three years after Ford, the Supreme Court held that executions of mentally retarded persons and juveniles were permissible under the Eighth Amendment. Penry v. Lynaugh, 492 U.S. 302 (1989) (mentally retarded); Stanford v. Kentucky, 492 U.S. 361 (1989) (juveniles). In Penry, Justice O'Connor, writing for herself, the Chief Justice, and Justices White, Scalia and Kennedy, quoted Justice Powell's standard, and many state and federal courts have taken this as a definitive endorsement of that language by the Supreme Court. This language is not, however, in the category of square holdings that are entitled to complete deference as definitive rulings of the Supreme Court. Only Justice Powell, who provided the fifth and deciding vote in Ford, embraced that formulation in that case. The reference in Penry is a description of Ford in a case upholding execution of a mentally retarded person, where the standard for insanity was not in issue. I agree that many courts have taken the

6

Penry language as an endorsement of the Powell formulation by a majority of the Supreme Court. I nonetheless note that the Penry description is as susceptible of being read as a minimum standard, without necessarily formulating the precise standard. In any event it is dicta, not a holding, and the Supreme Court has not spoken since.

More importantly, both Penry and Stanford have now been overruled. See Atkins v. Virginia, 536 U.S. 304 (2002) (execution of the mentally retarded violates the Eighth Amendment); Roper v. Simmons, 125 S. Ct. 1183 (2005) (execution of juveniles violates the Eighth Amendment). In the course of reexamining Penry and Stanford, more than a majority of the Supreme Court has described the basis for the Eighth Amendment's prohibition against execution of the mentally retarded as "diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others." Atkins, 536 U.S. at 318; Roper, 125 S. Ct. at 1209 (O'Connor, J., dissenting, quoting Atkins majority). The objective facts cited by Baird's attorneys, if proven, would seem to fit this description, though his impairment is not mental retardation, as that condition is usually understood, but mental illness.

Atkins may carry another implication for the Ford formulation. Atkins held that the Eighth Amendment prohibits execution of a mentally retarded person, but famously left open the definition of mental retardation. Specifically, Atkins stated "As was our approach in Ford v. Wainwright . . . with regard to insanity, 'we leave to the States the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences.'" 536 U.S. at 317. Although Ford itself may have been taken to address only the procedures through which insanity may be addressed and determined, it is very clear that Atkins left to the States both the standard of mental retardation and also any procedural issues involved in determining whether a person meets that standard. If we take literally the "as was our approach in Ford," the definition of insanity, like that of mental retardation, is left to the States to work out. Whether the net result is to leave the definition of insanity to the States remains an open issue after Atkins. And even if we ultimately arrive at a uniform federal standard, the precise nature of that standard remains to be definitively established. Certainly a different evolving national consensus as to mental retardation was identified in Atkins compared to that found in Penry. All of this leads me to exercise extreme caution in executing a person whose mental health is plainly questionable unless we can be certain the person does not meet the Ford standard, much less another more restrictive standard that may now apply in light of Atkins and Roper.

Finally, Atkins reemphasized the longstanding doctrine that the severity of the punishment must be correlated to the culpability of the defendant. 536 U.S. at 311. The ability to relate to reality is surely a component of culpability. Even if Justice Powell's formulation of the standard of insanity is the law, both Ford and Atkins make clear that States are to work out the procedures by which an individual's sanity is to be determined. Some States have adopted rather specific procedures, for example calling for prison officials or the executive branch to initiate an examination of death row inmates whose sanity is in question.[3] Indiana has no such statutory

---

[3] See, e.g., Conn. Gen. Stat § 15-101 (2004) (if the person "appears to the warden to be insane" an application to a court for psychiatric exam is to be made); Fla. Stat. § 922.07 (2005) ("when the Governor is informed that a person under sentence of death may be insane" a commission of psychiatrists is to be

procedure. We have provided by judicial rule and decision for the possibility of a successive petition for post-conviction relief to determine sanity, but have no clear guidelines as to what triggers that procedure other than the general provision of P.C.R. 2 that the petitioner must show a "reasonable possibility" that he or she is entitled to relief. In the absence of any guidance from the legislature on this point, we should construe that provision generously if in doubt.

I certainly agree with the majority on the elementary and fundamental point that we are bound by decisions of the United States Supreme Court on questions of federal law. Justice O'Connor, dissenting in Roper, expressed frustration at her colleagues' refusal to "reprove, or even acknowledge, the Supreme Court of Missouri's unabashed refusal to follow [the U.S. Supreme Court's] controlling decision in Stanford." 125 S. Ct. at 1209. She noted several recent cases in which the Supreme Court of the United States has held that it is its "prerogative alone to overrule one of its precedents." Roper itself, and each of the other cases Justice O'Connor cited with respect to deference to Supreme Court precedent, overruled a prior holding that had established a clear rule of law.[4] Here we are dealing with the meaning of "insane," a term that was not elaborated by a majority of the Court that used the term in Ford, and has never been squarely addressed by the Court since then. That is not the sort of precedent that demands unquestioning fidelity in the face of subsequent language from the Supreme Court itself that raises legitimate questions as to the meaning of the term. In any event, as indicated above, I believe Baird has shown a "reasonable possibility" that he may be insane, even under Justice Powell's formulation. That is the test of P.C.R. 2, and I believe Baird should be given an opportunity to make his case.

Rucker, J., joins.

---

appointed); Nev. Rev. Stat. § 176.425 (2004) (if "there is a good reason to believe that the defendant has become insane" the director of the department of corrections "may" petition a court to trigger a sanity hearing); Ohio Rev. Code Ann. § 2949.28 (LexisNexis 2005) ("If a convict sentenced to death appears to be insane" the official in charge of the institution having custody "shall" give notice to the court that imposed the sentence).

[4] Roper held that persons under the age of eighteen may not be executed, overruling Stanford on that point of Eighth Amendment law. State Oil Co. v. Khan, 522 U.S. 3 (1997) held that vertical maximum price fixing is not a per se violation of the Sherman Act, overruling Albrecht v. Herald Co., 390 U.S. 145 (1968). United States v. Hatter, 532 U.S. 557 (2001) held that a general tax law can be applied to federal judges appointed before the effective date of the tax, overruling Evans v. Gore, 253 U. S. 245 (1920). Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477 (1989) held that agreements to arbitrate claims under the Securities Act are enforceable, overruling Wilko v. Swan, 346 U.S. 427 (1953).